702 So.2d 428 (1997)
Wallace B. COOPER, Vivion A. Cooper and Buddy Ray Cooper
v.
GENERAL MOTORS CORPORATION, Louisa Dixon, as Commissioner Of Public Safety, and Estate of William H. White (Deceased).
No. 92-CA-01334-SCT.
Supreme Court of Mississippi.
December 8, 1997.
*429 William P. Featherston, Jr., Ridgeland, Richard D. Stratton, James R. Pratt, III, Hogan Smith & Alspaugh, Birmingham, AL, for Appellants.
Charles Gregory Copeland, Copeland Cook Taylor & Bush, Jackson, Keith D. Obert, Akers & Overt, Brandon, Eugene D. Martenson, Christopher S. Rodgers, Huie Fernambacq & Stewart, Birmingham, David M. Heilbron, San Francisco, CA, for Appellees.
John L. Walker, Jr., Walker Walker & Green, Jackson, C. Victor Welsh, III, Crymes G. Pittman, Pittman Germany Roberts & Welsh, Jackson, Jay Boling, Merdian, William Liston, Winona, Roland C. Lewis, Jackson, Michael T. Jaques, Langston Frazer Sweet & Freese, Jackson, Paul S. Minor, Mark D. Lampkin, Minor & Guice, Biloxi, for amicus curiae.
En Banc.

ON MOTION FOR REHEARING
SMITH, Justice, for the Court:
¶ 1. Motion for rehearing denied. The original opinions are withdrawn and these opinions are substituted therefor.

PREAMBLE
¶ 2. We recognize a person's right to maintain a common law tort action against automobile manufacturers. The manufacturer's compliance with the Federal Motor Vehicle Safety Standards Act does not immunize the manufacturer from State tort liability. We accept the disclaimer within the statute that "[c]ompliance with any Federal motor vehicle safety standard issued under this title does not exempt any person from any liability under common law." 15 U.S.C. § 1397(k)(1988).[1] It is not necessary today to find common law liability. However, in so far as state common law torts are reserved by the Federal statute or preserved thereby, we claim them for State jurisdiction.

INTRODUCTION
¶ 3. This case comes to this Court from the Circuit Court of Madison County which granted General Motors Corporation's (hereinafter General Motors) motion for partial summary judgment. The Cooper family brought a wrongful death action against General Motors for failure to install an air bag in the 1984 Buick driven by their now deceased son. General Motors filed a motion for summary judgment on the air bag claim (1) as being preempted by federal law, and (2) for failing to state a cognizable claim under Mississippi common law. General Motors contended that the federal motor vehicle *430 standards gave automobile manufacturers the option of installing air bags or manual seat belts. The lower court granted the summary judgment motion on both counts. After a careful and exhausting review of the voluminous case law on air bag claims, we find that the air bag claim is preempted by federal law, and that it also fails to state a cognizable claim under Mississippi law. As such, the award of partial summary judgment to General Motors was proper.

STATEMENT OF FACTS
¶ 4. The facts are undisputed. Joseph T. Cooper was killed on November 23, 1990, on Interstate Highway 55 South, near Canton, Mississippi. Cooper's 1984 Buick Regal was struck "head-on" by a 1977 model Pontiac operated by William H. White, who was driving his vehicle the wrong way on the interstate. The Buick was equipped with a standard three-point lap/shoulder belt manual seat belt. The seat belt was not deficient and fully met its performance requirements. Cooper was not wearing the available manual seat belt in the vehicle at the time of the accident. Cooper died from massive trauma to the head and chest suffered during the collision.
¶ 5. On November 13, 1991, the Cooper family brought a strict liability and negligence action against defendant General Motors in the Circuit Court of Madison County, Mississippi, to recover damages for the death of Cooper. In their complaint, they allege that General Motors did not make the occupant restraint system utilized in the 1984 Buick Regal to meet the common law standards for crashworthiness. They allege that General Motors should have utilized a driverside air bag so as to be more adequate in frontal collisions.
¶ 6. General Motors filed an answer on December 13, 1991, and later, filed a motion for partial summary judgment directed only to the claim that the Regal was defective because it lacked an air bag. General Motors claimed that the plaintiffs' inadequate restraint system claim was expressly and impliedly preempted by federal law, and that even if the claims were not preempted, the plaintiffs' allegation that the vehicle was defective because it contained a defective restraint system failed to state claims under Mississippi law for negligence and strict liability.
¶ 7. On September 18, 1992, the lower court granted defendant's motion for partial summary judgment. The lower court applied the consumer expectation test and found that plaintiffs had failed to state claims against General Motors for negligence and strict liability with regard to General Motors' installation of a defective restraint system in the vehicle. The trier found that the failure to install an air bag in a 1984 car was not, as a matter of law, the basis of a claim under the theories of negligence and strict liability. The lower court found that the lap belt/shoulder harness, if utilized properly, provided protection in frontal collisions, and met the expectations of an ordinary consumer, especially in light of the fact that air bags were virtually nonexistent in 1984. The lower court further found that, even assuming the plaintiffs had stated a claim under Mississippi law, federal law preempted that claim. A Motion to Reconsider was filed by the plaintiffs, and denied by the lower court on November 30, 1992. Aggrieved, the Coopers appeal, citing the following two issues:
I. WHETHER THE TRIAL COURT ERRED IN HOLDING THAT THEAIR BAG CLAIM IS PREEMPTED BY FEDERAL LAW?
II. WHETHER THE TRIAL COURT ERRED IN HOLDING THAT THE STRICT LIABILITY AND NEGLIGENCE CLAIMS ARE NOTCOGNIZABLE UNDER MISSISSIPPI COMMON LAW?

DISCUSSION OF LAW

I. WHETHER THE TRIAL COURT ERRED IN HOLDING THAT THE AIR BAG CLAIM IS PREEMPTED BY FEDERAL LAW?

A. The Pertinent Statutes
¶ 8. Four provisions of the Safety Act are pertinent to our inquiry. We set them out in *431 detail before proceeding to a more in-depth discussion of the issues.
¶ 9. Federal Motor Vehicle Safety Standard 208 expressly grants manufacturers the option to install manual seat belts in lieu of air bags. Three options are provided for manufacturers:
1. Passive protection from frontal and angular collisions (air bags only);
2. Passive protection from head-on collisions, supplemented by seat belts and a belt warning system (air bags and seat belts); or
3. Lap and shoulder belts, plus a belt warning system.
49 C.F.R. § 571.208, S4.2.2 (1983). Here, General Motors exercised the third choice. The Safety Act contains a preemption clause, 15 U.S.C. § 1392(d)(1988)[2], which provides:
Whenever a Federal motor vehicle safety standard established under this title is in effect, no State or political subdivision of a State shall have any authority either to establish, or to continue in effect, with respect to any motor vehicle or item of motor vehicle equipment any safety standard applicable to the same aspect of performance of such vehicle or item of equipment which is not identical to the Federal standard. Nothing in this section shall be construed as preventing any State from enforcing any safety standard which is identical to a Federal safety standard. Nothing in this section shall be construed to prevent the Federal Government or the government of any State or political subdivision thereof from establishing a safety requirement applicable to motor vehicles or motor vehicle equipment procured for its own use if such requirement imposes a higher standard of performance than that required to comply with the otherwise applicable Federal standard.
(emphasis added).
The Safety Act also contains a savings clause, which states that:
[c]ompliance with any Federal motor vehicle safety standard issued under this title does not exempt any person from any liability under common law.
15 U.S.C. § 1397(k)(1988).
Also, part of the federal regulatory framework is § 1410b which provides:
(2) Except as otherwise provided in paragraph (3), no Federal motor vehicle safety standard respecting occupant restraint systems may -
(A) have the effect of requiring, or
(B) provide that a manufacturer is permitted to comply with such standard by means of, an occupant restraint system other than a belt system.
(3)(A) Paragraph (2) shall not apply to a Federal motor vehicle safety standard which provides that a manufacturer is permitted to comply with such standard by equipping motor vehicles manufactured by him with either 
(i) a belt system, or
(ii) any other occupant restraint system specified in such standard.
15 U.S.C. § 1410b(b)(2)-(3)(A)(1988).[3]

B. History of the Safety Act
¶ 10. The purpose of the Safety Act is:
"to reduce traffic accidents and deaths and injuries to persons resulting from traffic accidents." 15 U.S.C. § 1381. The Act requires the Secretary of Transportation to establish "appropriate Federal motor vehicle safety standards." § 1392(a). The Act defines a safety standard as "a minimum standard for motor vehicle performance, or motor vehicle equipment performance, which is practicable, which meets the need for motor vehicle safety and which provides objective criteria." § 1391(2).
Freightliner Corp. v. Myrick, 514 U.S. 280, 283-84, 115 S.Ct. 1483, 1485-86, 131 L.Ed.2d 385 (1995). Other courts agree. See Pokorny v. Ford Motor Co., 902 F.2d 1116, 1122 (3rd Cir.), cert. denied, 498 U.S. 853, 111 S.Ct. 147, 112 L.Ed.2d 113 (1990). "Through *432 the Safety Act, Congress sought to increase automotive safety by authorizing the promulgation of safety standards... . The responsibility for promulgating these standards was given first to the Department of Transportation and later to the National Highway Transportation Safety Administration (NHTSA)." Taylor v. General Motors Corp., 875 F.2d 816, 822 (11th Cir.1989), cert. denied, 494 U.S. 1065, 110 S.Ct. 1781, 108 L.Ed.2d 783 (1990).
Standard 208, was first adopted in 1967, [and] initially required the installation of manual lap belts in all new automobiles... . In 1972, NHTSA amended Standard 208 to require a gradual phase-in of passive restraints (i.e., airbags, padded interiors, or automatic seat belts) in all cars. For models made before August 1975, manufacturers were permitted to use manual belts with an ignition interlock system, which prevented a car from starting until the seat belts were fastened... . Public outcry against this ignition interlock system prompted Congress in 1974 to amend the Safety Act. The amendment required NHTSA to rescind the ignition interlock standard. It also authorized NHTSA to adopt a standard that permitted manufacturers to install either passive restraint systems or manual belt systems; the amendment, [further], prohibited NHTSA from issuing any standard that required manufacturers to install passive restraints... . As amended, Standard 208 granted manufacturers the option to install one of three restraint systems: passive restraints for front and lateral crashes; passive restraints for front crashes plus lap belts for side crashes and rollovers; or manual seat belts alone.
Taylor, 875 F.2d at 823. "Apparently there was significant concern among motorists that certain types of passive safety systems, most particularly airbags and automatic seat belts, could become mandatory in motor vehicles and that motor vehicles' ignitions soon would be designed not to start unless the occupants' seat belts were connected." Pokorny v. Ford Motor Co., 902 F.2d 1116, 1123 (3rd Cir.1990) (citing Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 34-37, 103 S.Ct. 2856, 2862-64, 77 L.Ed.2d 443 (1983)).
The options presented by the Department of Transportation in Standard 208 reflect congressional intent [of] flexibility and choice [as] an essential element of the regulatory framework... . See, e.g., 49 Fed. Reg. 28962, 28997 (1984) (Secretary Dole explained that the flexibility and variety built into Standard 208 was needed to `provide sufficient latitude for industry to develop the most effective [occupant restraint] systems' and to help `overcome any concerns about public acceptability by permitting some public choice')... .
Pokorny, 902 F.2d at 1124.
¶ 11. Past Department of Transportation Secretaries have rejected mandatory air bags for very sound reasons, such as public acceptance, development of technology, and the need for additional data. 15 U.S.C. § 1381 (1988) ("Congress determines that it is necessary ... to undertake and support necessary safety research and development"). "The two principal systems that would satisfy the Standard were air bags and passive belts; the choice of which system to install was left to the manufacturers." Motor Vehicle Mfrs. Ass'n, 463 U.S. at 37, 103 S.Ct. at 2863. Thus, any air bag requirements were to be gradually phased in. 46 Fed.Reg. 12034, 21174-75 (1981); 49 Fed.Reg. 28989, 28987, 28997, 29000 (1984). "Federal law under the Safety Act, the regulations promulgated thereunder, and the revised provisions permit but do not require the installation of air bags in passenger cars until 1996 at the earliest." Drattel v. Toyota Motor Corporation, No. 7897/93, slip op. at 3 (N.Y. Sup. Ct. Jan. 4, 1996).
¶ 12. From the legislative history, we conclude that the purpose of the Safety Act is to reduce traffic injuries and save lives. However, it is also crystal clear that Congress sought to further this goal by providing automobile manufacturers the discretion to choose whether to install air bags, manual seat belts, or both. This latitude was given because of public outcry against mandatory restraint systems, as well as the need for additional scientific data in the development of air bag restraint systems. Congress wisely *433 saw that mandating air bags would be a "rush to (scientific) judgment." Therefore, as the scientific data on automobile restraint systems trickled in over the years, the Department of Transportation accordingly and gradually phased in or increased the percentage requirement of air bags.

C. Case Law
¶ 13. The air bag argument asserted by appellants is not new to the courts. This issue has been hammered out in various jurisdictions, with strikingly different results. The overwhelming majority of the cases suggests that a common law claim for failure to install an air bag is subject to implied federal preemption. Cellucci v. General Motors Corp., 450 Pa.Super. 438, 676 A.2d 253 (1996); Drattel v. Toyota Motor Corp., No. 7897/93 (N.Y. Sup. Ct. Jan. 4, 1996); Panarites v. Williams, 216 A.D.2d 874, 629 N.Y.S.2d 359 (4th Dept. 1995); Marrs v. Ford Motor Co., 852 S.W.2d 570 (Tex. App. 1993); Kitts v. General Motors Corp., 875 F.2d 787 (10th Cir.1989), cert. denied, 494 U.S. 1065, 110 S.Ct. 1781, 108 L.Ed.2d 783 (1990); Pokorny v. Ford Motor Co., 902 F.2d 1116 (3rd Cir.), cert. denied, 498 U.S. 853, 111 S.Ct. 147, 112 L.Ed.2d 113 (1990); Taylor v. General Motors Corp., 875 F.2d 816 (11th Cir.1989), cert. denied, 494 U.S. 1065, 110 S.Ct. 1781, 108 L.Ed.2d 783 (1990); Wood v. General Motors Corp., 865 F.2d 395 (1st Cir.1988), cert. denied, 494 U.S. 1065, 110 S.Ct. 1781, 108 L.Ed.2d 782 (1990); Kolbeck v. General Motors Corp., 702 F. Supp. 532 (E.D.Pa. 1988); Baird v. General Motors, Corp., 654 F. Supp. 28 (N.D.Ohio 1986); Heath v. General Motors Corp., 756 F. Supp. 1144 (S.D.Ind. 1991); Dallas v. General Motors Corp., 725 F. Supp. 902 (W.D.Tex. 1989); Tammen v. General Motors Corp., 857 F. Supp. 788 (D.Kan. 1994); Montag v. Honda Motor Co., 856 F. Supp. 574 (D.Colo. 1994), aff'd, 75 F.3d 1414 (10th Cir.1996); Gardner v. Honda Motor Co., 145 A.D.2d 41, 536 N.Y.S.2d 303 (1988), appeal dismissed, 74 N.Y.2d 715, 543 N.Y.S.2d 401, 541 N.E.2d 430 (1989); Staggs v. Chrysler Corp., 678 F. Supp. 270 (N.D.Ga. 1987); Schick v. Chrysler Corp., 675 F. Supp. 1183 (D.S.D. 1987); Nissan Motor Corp. v. Superior Court (Meier), 212 Cal. App.3d 980, 261 Cal. Rptr. 80 (1989), cert. denied, 494 U.S. 1066, 110 S.Ct. 1782, 108 L.Ed.2d 784 (1990); Wattelet v. Toyota Motor Corp., 676 F. Supp. 1039 (D.Mont. 1987). See also Myrick v. Freuhauf Corp., 13 F.3d 1516 (11th Cir.1994), aff'd sub nom., Freightliner Corp. v. Myrick, 514 U.S. 280, 115 S.Ct. 1483, 131 L.Ed.2d 385 (1995) (deals with anti-lock brakes (hereinafter ABS) claim, not air bag claims, and clarifies the intent of Cipollone v. Liggett Group, Inc., 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) in regard to preemption). See also Hernandez-Gomez v. Leonardo, 180 Ariz. 297, 884 P.2d 183 (1994), cert. granted, decision vacated and remanded for consideration in light of Myrick, 514 U.S. 1094, 115 S.Ct. 1819, 131 L.Ed.2d 742 (1995). The preceding list of cites for implied preemption holding is not exhaustive.
¶ 14. Some courts have even found that the Safety Act "expressly" preempts such common law actions. Johnson v. General Motors Corp., 889 F. Supp. 451 (W.D.Okla. 1995); Gills v. Ford Motor Co., 829 F. Supp. 894 (W.D.Ky. 1993); Dykema v. Volkswagenwerk AG, 189 Wis.2d 206, 525 N.W.2d 754 (App. 1994), cert. denied, ___ U.S. ___, 116 S.Ct. 60, 133 L.Ed.2d 23, reh'g denied, ___ U.S. ___, 116 S.Ct. 549, 133 L.Ed.2d 451 (1995); Boyle v. Chrysler Corp., 177 Wis.2d 207, 501 N.W.2d 865 (App.), review denied, 510 N.W.2d 137 (Wis. 1993); Cox v. Baltimore County, 646 F. Supp. 761 (D.Md. 1986); Vanover v. Ford Motor Co., 632 F. Supp. 1095 (E.D.Mo. 1986); Wickstrom v. Maplewood Toyota, Inc., 416 N.W.2d 838 (Minn. Ct. App. 1987), cert. denied, 487 U.S. 1236, 108 S.Ct. 2905, 101 L.Ed.2d 937 (1988).
¶ 15. Yet, a few courts rebelled against the general principle, and held that the Safety Act and safety standards do not preempt state common law suits for failure to provide air bags. This is most definitely the minority view. Nelson v. Ford Motor Co., No. 93-CV-000417 (Ohio Ct. App. Dec. 22, 1995); Wilson v. Pleasant, 645 N.E.2d 638 (Ind. Ct. App. 1994), rev'd, 660 N.E.2d 327 (Ind. 1995); Tebbetts v. Ford Motor Co., 140 N.H. 203, 665 A.2d 345 (1995), cert. denied, ___ U.S. ___, 116 S.Ct. 773, 133 L.Ed.2d 726 (1996); Murphy v. Nissan Motor Corp., 650 F. Supp. 922 (E.D.N.Y. 1987); Richart v. Ford Motor *434 Co., 681 F. Supp. 1462 (D.N.M. 1988), rev'd, 875 F.2d 787 (10th Cir.1989); Garrett v. Ford Motor Co., 684 F. Supp. 407 (D.Md. 1987). See also Myrick v. Freuhauf Corp., 13 F.3d 1516 (11th Cir.1994), aff'd sub nom., Freightliner Corp. v. Myrick, 514 U.S. 280, 115 S.Ct. 1483, 131 L.Ed.2d 385 (1995) (deals with ABS claim, not air bag claims).
¶ 16. There are only three ways in which federal preemption can occur:
(1) where Congress explicitly preempts state law,
(2) where preemption is implied because Congress has occupied the entire field, or
(3) where preemption is implied because there is an actual conflict between federal and state law.
English v. General Electric Co., 496 U.S. 72, 78-79, 110 S.Ct. 2270, 2274-75, 110 L.Ed.2d 65 (1990); Schneidewind v. ANR Pipeline Co., 485 U.S. 293, 108 S.Ct. 1145, 99 L.Ed.2d 316 (1988). The cornerstone of preemption is that a state law which conflicts with the federal law is invalid under the Supremacy Clause. Freightliner Corp. v. Myrick, 514 U.S. 280, 287, 115 S.Ct. 1483, 1487, 131 L.Ed.2d 385 (1995) (citing English v. General Electric Co., 496 U.S. 72, 78-79, 110 S.Ct. 2270, 2274-75, 110 L.Ed.2d 65 (1990)). Sometimes, depending on the regulation, federal laws or standards can be considered floors, and a state law or standard can create a ceiling, so long as it does not pose a conflict. California Federal Savings & Loan Ass'n. v. Guerra, 479 U.S. 272, 280, 107 S.Ct. 683, 689, 93 L.Ed.2d 613 (1987) (a state's pregnancy discrimination law can go beyond the requirements of the federal Title VII).
¶ 17. In the case sub judice, there appears to be both express preemption, under § 1392(d), and implied preemption, when considering the cumulative effect of § 1392(d) and § 1397(k). Federal Motor Vehicle Safety Standards (hereinafter FMVSS) is unusual. While one might look at FMVSS as having no preemptive effect because it is a minimum standard, and thereby, freeing a state to exceed its requirement, FMVSS 208 differs in that it explicitly offers an option to manufacturers not to include air bags, and thus, failure to include air bags in automobiles cannot give rise to state liability without conflicting with the federal regulation. Thus, the third kind of preemption (implied pre-emption through actual conflict) is applicable to the issue at bar. Accordingly, this Court will filter this case through an implied pre-emption grid.
¶ 18. As a general rule, a state cannot impose common law damages on individuals for doing what a federal act or regulation authorized them to do. Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co., 450 U.S. 311, 318, 101 S.Ct. 1124, 1130-31, 67 L.Ed.2d 258 (1981); International Paper Co. v. Ouellette, 479 U.S. 481, 493-94, 107 S.Ct. 805, 812-13, 93 L.Ed.2d 883 (1987) (Congress could not have "intended to undermine ... [the Act] through a general saving clause"). Thus, General Motors should not be penalized for choosing a federally provided option just because there exists a savings clause allowing for common law claims to take place. In light of this general rule, the issue confronting this Court is whether the savings clause (which provides that "compliance with" the Safety Act "does not exempt any person from any liability under common law") would allow common law liability for failure to provide an air bag in spite of the federal law (FMVSS 208) which allows manufacturers the option of not choosing an air bag and the preemption clause which forbids any state laws or standards not identical or in conflict with the federal law. We answer this question in the negative. In other words, we find that the air bag claim is preempted. Our conclusion is supported by a review of the following cases.
¶ 19. The issue before the Kitts court was whether the Safety Act "preempt[ed] state tort claims against automobile manufacturers who comply ... [the FMVSS] regarding occupant crash protection but fail to install air bags as well." Kitts, 875 F.2d at 788. Kitts involved plaintiffs alleging negligent and defective design because the automobile "did not have a passive restraint system, i.e., air bags, in addition to or instead of federally approved safety belts." Id. The court concluded "that the Safety Act preempt[ed] *435 plaintiff's air bag claim... ." Id. at 789. The Court reasoned that:
Congress's purposes, as revealed in the Safety Act and in the legislative history, plainly imply a preemptive intent. Such an action is ... impliedly preempted because it would effectively circumvent section 1392(d)'s prohibition of nonidentical state standards covering the same aspect of performance as a federal safety standard. Allowing a common law action holding manufacturers liable for failing to install air bags in motor vehicles would be tantamount to establishing a conflicting safety standard that necessarily encroaches upon the goal of uniformity specifically set forth by Congress in this area.
Kitts, 875 F.2d at 789 (quoting Wood v. General Motors Corp., 865 F.2d 395, 402 (1st Cir.1988)). Another court stated it this way: "[g]eneral savings clauses cannot be read to permit common-law actions that contradict and subvert a statutory scheme." Miranda v. Fridman, 276 N.J. Super. 20, 647 A.2d 167, 173 (1994)(quoting Boyle v. Chrysler Corp., 177 Wis.2d 207, 501 N.W.2d 865, 869 (App. 1993)). "It was the common sense result, prompted by concern over the effect of permitting juries in fifty states to create as many safety standards as there were verdicts, all binding on car makers when nationally marketing a product approved by the national government." Id., 647 A.2d at 172. After all, "`[a]n automobile manufacturer faced with the prospect of choosing the [passive restraint options], or facing potential exposure to compensatory and punitive damages for failing to do so, has but one realistic choice.'" Kolbeck, 702 F. Supp. at 541 (alteration in original)(quoting Baird v. General Motors Corp., 654 F. Supp. 28, 32 (N.D.Ohio 1986)).
¶ 20. NHTSA safety standards are exclusive when they apply, but not exhaustive. "`[T]he clear meaning of the [savings] clause is that compliance with the federal standards does not protect an automobile manufacturer from liability for design or manufacturing defects in connection with matters not covered by the federal standards.'" Taylor v. General Motors Corp., 875 F.2d 816, 824 (11th Cir.1989) (quoting Cox v. Baltimore County, 646 F. Supp. 761, 764 (D.Md. 1986)). "Such a construction, however, would render the savings clause a mere redundancy since the preemption clause itself proves that where a federal standard does not govern `the same aspect of performance' as the state standard, the state standard is not preempted." Taylor, 875 F.2d at 824. Albeit superfluous, "that is a lesser offense than adopting a reading that renders the clause contrary to a principal purpose of Congress." Miranda, 647 A.2d at 174. Even where the preemptive intent behind the federal regulatory scheme is unclear from its statutory language or legislative history, the federal law nevertheless preempts the state law to the extent that the ordinary application of the two laws creates a conflict. Taylor, 875 F.2d at 825.
¶ 21. This Court holds likewise. Allowing common law liability under Mississippi law for failure to install an air bag punishes manufacturers for exercising a federally sanctioned choice. It would create an actual and definitive conflict. Thus, the trier was not in error for granting partial summary judgment on the preemption claim.
¶ 22. While the various jurisdictions were meting out this issue, along came Cipollone v. Liggett Group, Inc., 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992), which dealt with the preemptive effect of the Public Health Cigarette Smoking Act of 1969. 15 U.S.C. §§ 1331-1340. That Act's preemption clause read:
No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this Act.
Id. at 515, 112 S.Ct. at 2616. Six justices found that the above quoted clause barred state damage claims asserting product defect for failure to warn where the cigarette package bore the federally required label. Id. at 506-07, 112 S.Ct. at 2612-13. The Cipollone Court acknowledged the general presumption against preemption, but concluded that it was constrained to interpret the phrase "state law" in the Cigarette Act's preemption provision to encompass state common law because an earlier version of that Act had *436 less restrictive preemption language which did not encompass state common law. Id. at 522, 112 S.Ct. at 2620. In contrast to the Act involved in Cipollone, in the Safety Act there is an express provision exempting any common law claim from the preemption provision, namely § 1397(k). Cipollone also contained the following statement which caused sheer havoc and confusion in many courts:
When Congress has considered the issue of pre-emption and has included in the enacted legislation a provision explicitly addressing that issue, and when that provision provides a "reliable indicium of congressional intent with respect to state authority," "there is no need to infer congressional intent to pre-empt state laws from the substantive provisions" of the legislation.
Cipollone, 505 U.S. at 517, 112 S.Ct. at 2618 (citations omitted).
¶ 23. Many courts wrongly perceived this language in Cipollone as a new wrinkle in the fabric of preemption law. Via this statement, the Eleventh Circuit in Myrick was the first court to adhere to an aberrated understanding of preemption. Myrick v. Freuhauf Corp., 13 F.3d 1516 (11th Cir.1994) (because of the misunderstanding, Taylor was also brought into question). Soon thereafter, many other jurisdictions were reaching diametrically opposite results in light of Cipollone and Myrick. In these cases, the courts believed that either they had to find no preemption or express preemption; there could be no middle ground. Based on the above quote, some courts, relying on Cipollone, concluded that where there existed an express preemption clause, they were forbidden from engaging in an implied preemption analysis. And thus, a common law standard which was spared from that express preemption clause would have to be given effect, even if it conflicted with the main thrust of the federal law. See Myrick v. Freuhauf Corp., 13 F.3d 1516 (11th Cir.1994) (ABS claim, not air bag); Harris v. Ford Motor Co., No. 93-5248 DT (D.Cal. August 22, 1994); Hyundai Motor Co. v. Phillip, 639 So.2d 1064 (Fla.Ct.App. 1994); Loulos v. Dick Smith Ford, Inc., 882 S.W.2d 149 (Mo. Ct. App. 1994). During this timewarp, a good majority still held preemption, but sometimes, resorted to a strained version of express preemption so as to reach the correct common sense result. See Johnson v. General Motors Corp., 889 F. Supp. 451 (W.D.Okla. 1995); Gills v. Ford Motor Co., 829 F. Supp. 894 (W.D.Ky. 1993); Dykema v. Volkswagenwerk AG, 189 Wis.2d 206, 525 N.W.2d 754 (App. 1994); Boyle v. Chrysler Corp., 177 Wis.2d 207, 501 N.W.2d 865 (App. 1993).
¶ 24. Eventually, the United States Supreme Court granted certiorari in Myrick, and clarified its earlier opinion of Cipollone. In Freightliner Corp. v. Myrick, 514 U.S. 280, 115 S.Ct. 1483, 131 L.Ed.2d 385 (1995), the Supreme Court cleared up this muddled line of thinking and held that an "implied conflict" preemption may exist where it is impossible for a private party to comply with both state and federal requirements, or where state law stands as an obstacle to accomplishment and execution of full purposes and objective of Congress. Id. at 287, 115 S.Ct. at 1487. The Court rejected the Eleventh Circuit's reading of Cipollone.
According to respondents and the Court of Appeals, Cipollone v. Liggett Group, Inc., 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992), held that implied pre-emption cannot exist when Congress has chosen to include an express pre-emption clause in a statute. This argument is without merit.
Myrick, 514 U.S. at 287, 115 S.Ct. at 1487. (emphasis added). The Supreme Court held that its prior decision in Cipollone did not establish a categorical rule that implied pre-emption cannot exist when Congress has chosen to include an express preemption clause in the statute. Myrick, 514 U.S. at 287-88, 115 S.Ct. at 1487-88. "At best, an express preemption clause supports the inference that no implied preemption exists." Montag v. Honda Motor Co., 75 F.3d 1414 (10th Cir.1996) (citing Freightliner Corp. v. Myrick, 514 U.S. 280, 115 S.Ct. 1483, 131 L.Ed.2d 385 (1995)).
¶ 25. The Supreme Court ultimately affirmed the Eleventh Circuit's decision only because:
[the p]etitioners' pre-emption argument [was] ultimately futile, [since] respondent's *437 common-law actions do not conflict with federal law. ... [I]t is not impossible for petitioners to comply with both federal and state law because there is simply no federal standard for a private party to comply with. Nothing in the Safety Act or its regulations currently regulates the use of ABS devices... . [W]e cannot say that respondents' lawsuits frustrate `the accomplishment and execution of the full purposes and objectives of Congress....' In the absence of a promulgated safety standard, the Act simply fails to address the need for ABS devices at all. ... A finding of liability against petitioners would undermine no federal objectives or purposes with respect to ABS devices, since none exist.
Myrick, 514 U.S. at 289-90, 115 S.Ct. at 1488 (emphasis added) (citation omitted). In light of the existence of both a preemption clause, § 1392(d), and a savings clause, § 1392(k), in the Safety Act, under Myrick, there can still be implied preemption in the case sub judice. Thus, under the implied preemption analysis, this Court finds that FMVSS addresses the need for restraint systems, and gives manufacturers three choices. Therefore, a common law rule that punishes a manufacturer for not designing a car with an air bag does conflict with the federal law which allows the flexibility to choose. Forcing a car manufacturer to either install an air bag or face liability would frustrate the accomplishment and execution of the full purposes and objectives of Congress. Although indeed a major concern, safety is not the only concern here. Practicality is also vital in meeting the full purposes of Congress. See 15 U.S.C. § 1392(a)(1988) (federal motor vehicle standards are established to be "practical [and] meet the need for motor vehicle safety").
¶ 26. Therefore, at this point, those cases which assert, based on Cipollone, that it is improper to resort to the implied preemption doctrine since the Safety Act has an express preemption provision, are disposed of when trying to reach a conclusion in the case sub judice. See Harris v. Ford Motor Co., No. 93-5248 DT (D.Cal. August 22, 1994); Hyundai Motor Co. v. Phillip, 639 So.2d 1064 (Fla.Ct.App. 1994); Loulos v. Dick Smith Ford, Inc., 882 S.W.2d 149 (Mo. Ct. App. 1994). As previously noted, even though Harris, Loulos and Phillip stood for the no preemption position, other cases decided during the Cipollone-Myrick interim and shortly thereafter, found that imposing liability for a failure to equip a vehicle with an air bag is impliedly preempted by the Safety Act because the state standard would not be "identical" to the existing federal standard that does not require air bags. Panarites v. Williams, 216 A.D.2d 874, 629 N.Y.S.2d 359 (4th Dept. 1995); Montag v. Honda Motor Co., 856 F. Supp. 574 (D.Colo. 1994), aff'd, 75 F.3d 1414 (10th Cir.1996); Johnson v. General Motors Corp., 889 F. Supp. 451 (W.D.Okla. 1995); Gills v. Ford Motor Co., 829 F. Supp. 894 (W.D.Ky. 1993); Dykema v. Volkswagenwerk AG, 189 Wis.2d 206, 525 N.W.2d 754 (App. 1994); Boyle v. Chrysler Corp., 177 Wis.2d 207, 501 N.W.2d 865 (App. 1993). Though some of these cases rely on express preemption analysis, their ultimate holding is sound.
¶ 27. This Court finds that cases which hold that an air bag claim is preempted, either pre- or post-Cipollone, are better reasoned because they account for the preemption clause and the savings clause without negating the value of either. "Read together, the Act and the regulations promulgated thereunder, as amended from time to time, embody Congress' clear intent to allow but not require the installation of air bags in passenger cars until 1996 at the earliest... ." Panarites v. Williams, 629 N.Y.S.2d at 360. "[W]e conclude that a State standard imposing liability upon a manufacturer for not installing airbags would conflict with and frustrate the Federal policy of allowing manufacturers leeway in the decision whether to install airbags... ." Id. at 361.
¶ 28. Bearing in mind Cipollone, the court in Montag v. Honda Motor Co., 856 F. Supp. 574 (D.Colo. 1994), aff'd, 75 F.3d 1414 (10th Cir.1996), found an airbag claim preempted. Dealing with the seemingly apparent tension or conflict in the Safety Act, this Court married § 1392(d) and § 1397(k), and gave a clear and coherent pronouncement of this Act. It cleared the inconsistency, as expressed in the following statement:

*438 The "savings clause", § 1397(k), does not change the court's conclusion that § 1392(d) expressly preempts the Plaintiffs' products liability claim alleging that the absence of an airbag rendered the vehicle's design faulty. The savings clause indicates that Congress did not intend to occupy the entire field of motor vehicle safety. Because of the savings clause, the Plaintiffs are able to sue on their non-preempted state law tort claims. ... The savings clause does not express any specific congressional intent to preserve state common law actions that a vehicle was defective because it lacked an airbag, effectively circumventing § 1392(d)'s prohibition of nonidentical state standards covering the same aspect of performance as the federal safety standard... . Congress did not express an intent to undermine the Safety Act through this general savings clause.
Montag, 856 F. Supp. at 577 (emphasis added) (citation omitted). This distinction can best be illustrated in Pokorny v. Ford Motor Co., 902 F.2d 1116 (3rd Cir.1990). Pokorny brought a products liability claim alleging that a van was defectively designed because it was not equipped with passenger air bags or automatic seat belts and protective netting over windows to prevent injuries. Pokorny, 902 F.2d 1116 (3rd Cir.1990). The Third Circuit agreed that the air bag claim and the automatic seatbelt claim were both preempted by the Safety Act and FMVSS 208 because "[c]ommon law liability arising from the failure to install these two types of passive restraint systems would present an actual conflict with certain federal statutes and regulations." Id. at 1118. However, the protective netting claim was not preempted because that claim did not present an actual conflict with federal laws or regulations nor did it take away the flexibility established by the federal scheme. Id. at 1126.
¶ 29. Pokorny, like the Coopers, also argued the "savings clause" in the Safety Act, 15 U.S.C.A. § 1397(k), providing that "[c]ompliance with any Federal motor vehicle safety standard issued under this subchapter does not exempt any person from any liability under common law," saved their air bag claim, and asserted that the savings clause indicated that Congress did not intend for the Safety Act, or any federal standards promulgated under it, to expressly preempt common law actions alleging liability for defectively designed vehicles. Pokorny, 902 F.2d at 1119.
¶ 30. However, the Third Circuit believed that Pokorny's action created an actual conflict with the options given an automobile manufacturer. It stated:
Standard 208 was specifically designed to give automobile manufacturers a degree of flexibility and choice in providing passenger restraint systems.... [A]llowing Pokorny's suit to go forward and exposing Ford to possible liability for failing to install a passive restraint system in [a] 1981 [vehicle] would, in effect, eliminate that flexibility and choice.
Pokorny, 902 F.2d at 1119. The court cautioned that:
Uniformity was not Congress's primary goal in enacting the Safety Act. In 15 U.S.C.A. § 1381, Congress declared that the Safety Act's purpose was `to reduce traffic accidents and deaths and injuries to persons resulting from traffic accidents.' Congress evidently thought that preserving common law liability would further the goal of motor vehicle safety, since § 1397(k) was included as part of the Act... . [Thus,] we are unwilling to accept an overly broad notion of pre-emption... . [Analyzing the issue] in a more cautious and precise manner, [we will not] allow[] Pokorny's action ... where it presents an actual, clear conflict with federal regulation... . So analyzed, we conclude that Pokorny's action does present an actual conflict with the Safety Act and Standard 208 to the extent that it alleges liability for Ford's failure to include air bags or automatic seat belts on the passenger side of the 1981 van... . As the district court correctly recognized, Standard 208 was specifically designed to give automobile manufacturers a choice among several options when providing restraint systems for passengers... . Allowing Pokorny to assert that the Ford van was defectively designed because it did not contain air *439 bags or automatic seat belts frustrates the goals of the federal regulatory framework and undermines the flexibility that Congress and the Department of Transportation intended to give to automobile manufacturers in this area. Because potential common law liability interferes with the regulatory methods chosen by the federal government to achieve the Safety Act's stated goals, we think Pokorny's action is pre-empted to the extent that she alleges that the Ford van was defectively designed because it lacked air bags or automatic seat belts. See Ouellette, 479 U.S. at 494, 107 S.Ct. at 818.
Pokorny, 902 F.2d at 1122-23 (emphasis added) (citations omitted). "[A] state common law rule cannot take away the flexibility provided by a federal regulation, and cannot prohibit the exercise of a federally granted option." Id. at 1125 (quoting Taylor, 875 F.2d at 827). "The Safety Act's savings clause does not change our resolution of the pre-emption issue, since it is well-established that a savings clause like § 1397(k) does not `save' common law actions that would subvert a federal statutory or regulatory scheme." Pokorny, 902 F.2d at 1125.
¶ 31. Other courts are in accord. "Congress did not, however, intend for this pre-emption to `restrict State common law standards of care.' Therefore, Congress included the Savings Clause in the Safety Act to assure that common law claims based upon a manufacturer's failure to act with reasonable care were not exempted." Johnson v. General Motors Corp., 889 F. Supp. 451, 457 (citation omitted).
It appears that Congress intended for federal law to dictate the boundaries of a manufacturer's legal duty with respect to certain aspects of a motor vehicle's design and manufacture... . State law, however, is permitted to set the standard of care in the exercise of that legal duty... . Accordingly, federal law controls whether a manufacturer, like Defendant, has a legal duty to install an air bag in a vehicle. However, common law may dictate that once the decision in favor of air bag installation is made, the manufacturer exercise reasonable care in such installation. See Perry v. Mercedes Benz of N.A., 957 F.2d 1257, 1264 (5th Cir.1992).
Johnson, 889 F. Supp. at 457-58.
¶ 32. In Gills v. Ford Motor Co., 829 F. Supp. 894, 898-99 (W.D.Ky. 1993), the district court judge agreed that the preemption clause itself trumped state damage claims, and that the only function of the savings clause was to preserve "all other liability claims except those otherwise abolished by the preemption clause and covered by the regulation."
In Cipollone, the Supreme Court considered whether the prohibitions against state created `requirements' and `obligations' contained in Section 5(b) of the Public Health Cigarette Smoking Act of 1969, 15 U.S.C. §§ 1331-1340 ..., expressly preempts claims for damages brought by plaintiffs under common law. The Supreme Court held common law claims are expressly preempted under the Smoking Act, noting:
The phrase "[n]o requirement or prohibition" sweeps broadly and suggests no distinction between positive enactments and common law; to the contrary, those words easily encompass obligations that take the form of common law rules. As we noted in another context, "[state] regulation can be as effectively exerted through an award of damages as through some form of preventive relief. The obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy." Cipollone, 505 U.S. at 537, 112 S.Ct. at 2628-29, 120 L.Ed.2d at 436-37,(quoting San Diego Building Trades Council v. Garmon, 359 U.S. 236, 247, 79 S.Ct. 773, 781, 3 L.Ed.2d 775 (1959)).
Johnson, 889 F. Supp. at 459 (emphasis added).
Applying Cipollone, ... this [c]ourt finds the Safety Act's prohibition against state created `standards' ... easily encompasses the kind of common law rules and legal duties which would quickly be established if Oklahoma courts permitted plaintiffs to assert products liability claims against motor vehicle manufacturers who failed to *440 install air bags in vehicles because the federal Safety Standards did not require them to do so.
Johnson, 889 F. Supp. at 459-60. Savings clauses are "added at the end of the statute,  not to nullify other parts of the Act, or to defeat rights or remedies given by preceding sections,  but to preserve all existing rights which were not inconsistent with those created by the statute." Pennsylvania R.R. Co. v. Puritan Coal Mining Co., 237 U.S. 121, 129, 35 S.Ct. 484, 487, 59 L.Ed. 867 (1915).
¶ 33. We agree with this line of reasoning. The savings clause could not have been meant to thwart and undermine the entire purpose and language of the Act. It merely preserves all other liability claims except those otherwise abolished by the preemption clause and covered by the regulation. If we were to allow for common law claims for failure to install an air bag, our judicial standard would have the same regulatory effect as that of a legislative standard. This Court simply refuses to control and manipulate a policy upon which Congress has clearly spoken. Congress granted automobile manufacturers a choice in installing passive restraint systems. End of discussion.
¶ 34. The appellants have cited a number of cases for their proposition. First, they cite Perry v. Mercedes Benz of N.A., 957 F.2d 1257 (5th Cir.1992) as an invitation by the Fifth Circuit to acknowledge failure to install air bag claims. On the contrary. In Perry, the plaintiffs challenged the issue of whether the already installed air bag should have been deployed at a lower speed. The issue is not the same as the one at bar, where the plaintiffs are alleging that the design defect exists for failing to install an air bag. Perry was addressing the issue of a design defect within a chosen option, not the issue of defect due to failure to exercise another option. Thus, Perry has no bearing in the case sub judice.
¶ 35. The appellants also ask this Court to adopt Gingold v. Audi-NSU-Auto Union, A.G., 389 Pa.Super. 328, 567 A.2d 312 (1989). First, the Third Circuit, in Pokorny, rejected Gingold as unpersuasive. Pokorny, 902 F.2d at 1125 n. 10. Second, the Gingold Court relied on dissenting opinions from other courts in order to reach their conclusion and went against some of the directives of the United States Supreme Court, as found in Myrick. Gingold, 567 A.2d at 319. The Gingold court even conceded that the majority of the courts went against their holding, yet, they still chose to be in the minority. Id. at 315. The Gingold court's agenda was to force every automobile manufacturer to face liability for not having installed air bags, stating, "we do not dispute that common law damage awards can have a regulatory impact," Id. at 321, "[and t]ort actions can lead to greater insights into the inherent hazards or shortcomings of existing occupant restraint systems and test the public's acceptance of new systems through jury verdicts." Id. at 329. In essence, that court said that even if air bags were not mandated because of public outcry, that same public can later change its mind and retroactively punish manufacturers for catering to its wants. This line of reasoning warrants no further discussion.[4]
¶ 36. Appellants also urge this court to follow the recent decision of the Supreme Court of New Hampshire in Tebbetts v. Ford Motor Co., 140 N.H. 203, 665 A.2d 345 (1995). This court also acknowledged that the majority of courts went against them, but it was determined to submit the issue of whether Ford acted unreasonably in not installing an air bag to a jury. Id. at 348. There is nothing in the Tebbetts opinion that this court finds valuable in helping us reach a decision. See also Wilson v. Pleasant, 645 *441 N.E.2d 638 (Ind. Ct. App. 1994), rev'd, 660 N.E.2d 327 (Ind. 1995) (the Supreme Court of Indiana reaching its no preemption holding by dismissing cases which the United States Supreme Court remanded in light of Myrick or by relying on the dissenting opinions of other courts). Wilson and Tebbetts completely overlook the overarching general rule  that state law which conflicts with federal law is null and void. As the First Circuit put it, there is no "convincing reason why Congress would want to encourage states to impose an inconsistent safety standard ... by lawsuits but not by regulation." Wood, 865 F.2d at 412.
¶ 37. Lastly, in Nelson v. Ford Motor Co., No. 93-CV-000417, slip op. at 9 (Ohio Ct. App. Dec. 22, 1995), the Ohio appellate court held for the no preemption position, but recited the Congressional history as follows:
The Senate Committee Report directly commented on this issue. The original Senate version did not contain any express reservation of common law liability because the drafters believed there was no need for such a savings clause: `[T]he federal minimum safety standards need not be interpreted as restricting state common law standards of care. Compliance with such standards would thus not necessarily shield any person from products liability at common law.' S.Rep.No. 1301, 89th Cong., 2d Sess. 12 (1966) U.S.Code Cong & Admin.News 2709, 2720.
The House committee was not satisfied that the Senate version adequately preserved common law liability, and hence, added the savings clause. The House Committee Report explained that it `intended .. . that compliance with safety standards is not to be a defense or otherwise to affect the rights of parties under common law particularly those relating to warranty, contract, and tort liability.' H.R.Rep. No. 1776, 89th Cong..2d Sess. 24 (1966).
¶ 38. Thus, even though Nelson somehow reached a no preemption conclusion, it is equally clear that even that court's version of the legislative history does not reveal a congressional intent to undermine the regulatory framework, and that common law liability can be had so long as it does not conflict with the options granted under Standard 208. The above passage lends itself more to appellee's argument. Nowhere does the passage evince an intent to undermine the federally codified liberty of not installing an air bag; otherwise, why would there be a sentence preserving the common law liability for "warranty, contract, and tort liability?" Congress simply wanted to remind consumers that their nonpreempted rights, such as warranty, contract, or torts, were still viable.
¶ 39. In summary, the body of case law to which appellant cites is slender and certainly the minority view. The vast majority of the courts have come to the conclusion that an air bag claim is either expressly or impliedly preempted. If one were to engage in a numbers game of weighing how many courts are on each side, the fulcrum would certainly tip in favor of appellee automobile manufacturers.
¶ 40. Without playing a numbers game, this Court will decide which position is better reasoned and allow the statute to be fully interpreted without negating any clause. The majority rule is better reasoned and gives full effect to the intent of Congress, without making either clause a nullity. The federal law allows automobile manufacturers the discretion to choose between three restraint systems. This federal law also has a preemption clause that prohibits any conflicting state laws on the same matter, and a savings clause permitting any state common law actions. We do not see a conflict in these two sections. It does not take a genius to figure out that the preemption clause tells states that they cannot have any nonidentical laws in any area which is governed by federal regulations, and for those areas in which there are no regulations, the states can still apply their common law. The savings clause merely underscores the right of consumers to bring nonpreempted common law claims; it does not undermine the explicit preemptive language in the statute. This is the more reasoned approach that more and more courts are embracing, both pre-Cipollone, and post-Myrick. This Court will follow the majority rule for the reasons set forth in this opinion. The minority rule while trying to *442 account for the savings clause ends up destroying the total effect of the preemption clause, as well as retroactively punishing manufacturers for exercising a federally sanctioned choice. We cannot imagine that Congress intended for such draconian application of the Safety Act.
¶ 41. Summary judgment may be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). The facts are not in dispute; this is a pure question of law. See Pokorny v. Ford Motor Co., 902 F.2d 1116, 1119 (3rd Cir.), cert. denied, 498 U.S. 853, 111 S.Ct. 147, 112 L.Ed.2d 113 (1990). And the law invariably states that air bag claims are preempted. Thus, summary judgment was proper, and we affirm the lower court on this issue.

II. WHETHER THE TRIAL COURT ERRED IN HOLDING THAT THE STRICT LIABILITY AND NEGLIGENCE CLAIMS ARE NOT COGNIZABLE UNDER MISSISSIPPI COMMON LAW?
¶ 42. Now, we are confronted with the other side of the same coin  does the air bag claim pose a cognizable state law claim. Technically, we do not have to address this issue, as it is moot in light of our holding that air bag claims are impliedly preempted. Nonetheless, we will answer this question, as it was properly raised. Answering this question is no different than in our criminal cases, where we regularly apply the procedural bar when applicable and then alternatively proceed to a discussion on the merits. Such technique bodes well in terms of future appeals. Moreover, like other courts, this Court "will not allow plaintiffs to introduce through the back door what [was] preempted from introduc[tion] through the front door." Drattel v. Toyota Motor Corp., No. 7897/93, slip op. at 6 (N.Y. Sup. Ct., Jan. 4, 1996) (characterization and artful pleading of plaintiffs air bag claim insufficient under either alternative design theory or direct claim of defect to impose liability under state law, as state law would be nonidentical to federal law).
¶ 43. Our sister state has already declined the invitation to find a cognizable state law claim when pressed with the exact same claim. Schwartz v. Volvo N.A. Corp., 554 So.2d 927, 928 (Ala. 1989). "[F]ailure to install an air bag in [an] automobile is not a cognizable state claim... ." Id. at 928. Two other justices concurred with the majority's results, however, they "believe[d] that such a claim [was also] preempted by federal law." Id. at 929. There was one dissenter in Schwartz. In Georgia, an appellate court faced the same issue where the vehicle was alleged to be defective not in the operational sense but in that it did not contain what the plaintiffs contended to be the best or more advanced safety device of air bags. Honda Motor Co. v. Kimbrel, 189 Ga. App. 414, 376 S.E.2d 379 (1988). That court held:
In a products liability case predicated on negligence, the duty imposed is the traditional one of reasonable care and the manufacturer need not provide, from a design standpoint, a product incapable of producing injury... . [A] manufacturer [is not required] to occupy the status of an insurer... or to provide a collision safe vehicle. The manufacturer is under no obligation to make a machine `accident proof or foolproof... .'
Honda Motor Co., 376 S.E.2d at 383 (citations omitted). "If a `product is designed so that it is reasonably safe for the use intended, the product is not defective even though capable of producing injury where the injury results from an obvious or patent peril.'" Id. (citation omitted).
¶ 44. We follow the Schwartz and Kimbrel courts in finding that there is no cognizable state law on which the Coopers can "hang their hats". This result is reached regardless of whether consumer expectations is the test or whether we employ our current analysis of risk-utility.
¶ 45. Generally, a manufacturer is required to take reasonable steps, within the limits of cost and technology, to design and produce a product that minimizes or lessens injurious effects of a collision; however, manufacturers are not insurers and are under no duty to design a crashworthy, accident-proof or foolproof vehicle. See Hall v. *443 Mississippi Chemical Express, Inc., 528 So.2d 796, 800 (Miss. 1988) ("[o]ur law demands that products be reasonably fit, not perfectly so"); See also State Stove Mfg. Co. v. Hodges, 189 So.2d 113 (Miss. 1966), cert. denied, 386 U.S. 912, 87 S.Ct. 860, 17 L.Ed.2d 784 (1967). "[O]ur law does not require that every manufacturer incorporate into his product every innovation which ... might have rendered the product more safe." Hall, 528 So.2d at 799. Thus, the trial judge correctly noted that the consumer has the right to expect that the vehicle will be reasonably crashworthy, but no right to expect that crashworthiness will be provided or enhanced by an appliance known to be non-existent. In 1984, air bags were virtually non-existent. When the Buick Regal was purchased, the Coopers certainly knew that it did not contain an air bag. Certainly, they cannot expect an air bag to pop out knowing it did not exist. However, the Coopers now assert, in light of Sperry-New Holland v. Prestage, 617 So.2d 248 (Miss. 1993), that it was not so much what they were "expecting," but that the "risk" of driving a 1984 car without an air bag outweighed its "utility." Prestage adopted the risk-utility standard for design defect products liability cases. The trial court decided the air bag question based on the consumer expectations test, as was the law in 1992.
¶ 46. Prestage again has little resemblance to the case at bar. Here, the claimants are seeking an additional safety device to accompany the presently existing safety device. Prestage involved the issue of a defect within the device; claimant Prestage took issue with the product itself. Moreover, Prestage does not reject the consumer expectations test where no consumer could expect to be protected by an additional safety device that he obviously knew was not there.
¶ 47. It is undisputed that there were over a hundred million cars sold between 1973 and 1985, and essentially all had manual seat belts, not air bags or other passive restraints. It would be ludicrous to question the risk-utility of a product when the manufacturer chose a certain restraint system, and the plaintiffs are arguing that he should have chosen an additional different option. Forcing automobile manufacturers to face liability or design invincible automobiles would make them prohibitively expensive, and thereby disenfranchise certain segments of the buying populous.[5] In Prestage, we held that a riskutility analysis for products liability cases best protects both manufacturer and consumer and does not create any duty on the manufacturer to create a completely safe product; instead, the manufacturer is charged with a duty to make its product reasonably safe, regardless of whether the user is aware of its dangerousness. Id. at 256. Otherwise, "[c]reating such a product is often impossible or prohibitively expensive." Id. At this point, we decline to impose a duty on an automobile manufacturer to place two separate safety devices in a vehicle to protect against essentially the same danger.
¶ 48. This Court cannot disagree with the fact that the addition of an air bag to the manual seat belt would provide more vehicle passenger safety. See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 35, 103 S.Ct. 2856, 2862-63, 77 L.Ed.2d 443 (1983); Taylor v. General Motors Corp., 875 F.2d 816 (11th Cir.1989). However, imposing liability on a manufacturer for not installing an air bag in the early *444 eighties, when air bags were new to the scene and still undergoing scientific testing, goes against the grain of public policy. The principles of law should not overlook the need for scientific development or bring manufacturers to their knees for choosing one restraint system over another, in light of what was known to them at the time of their manufacturing.[6] Put simply, if the Coopers wanted a car with an air bag, they should have purchased a car with an air bag. If you want it, then pay for it. See Cellucci v. General Motors Corp., 450 Pa.Super. 438, 676 A.2d 253, 263 (1996) (concurring opinion).[7] For those consumers who feel secure without an air bag, they should purchase cars without an air bag. If the legislative and regulatory laws do not mandate air bags, then who are judges and juries to make the law from the bench or the box.
¶ 49. The trial court was not erroneous for finding that state law would not recognize a claim for the missing air bag under a consumer expectations analysis, as was the law in 1992. Regardless, as per the above discussion, even under the risk-utility analysis, there is still no cognizable state law under which appellants can bring this claim. Therefore, the trial court was correct for granting General Motors' motion for partial summary judgment on this issue as well.
¶ 50. JUDGMENT AFFIRMED.
PRATHER, P.J., PITTMAN, JAMES L. ROBERTS, Jr. and MILLS, JJ., concur.
DAN LEE, C.J., concurs in result only.
McRAE, J., dissents with separate written opinion joined by SULLIVAN, P.J., and BANKS, J.
McRAE, Justice, dissenting:
¶ 51. I disagree with the majority's insertion in its opinion of a preamble which ostensibly purports to preserve any common law claims the Coopers may have in state court, yet is contrary to its conclusion that the air bag claim is preempted by and in conflict with federal law. In its finding of preemption,[8] the majority subverts the overall purpose *445 of the National Traffic and Motor Vehicle Safety Act and suggests that its primary objective is to provide car manufacturers with flexibility in their choice of automobile safety features. Because the Safety Act is not to be construed either as the "Automobile Manufacturers' Limited Liability Act" or the "Automobile Manufacturers' Profit Protection Act," I am compelled to dissent.
¶ 52. Congress passed the Safety Act in 1966 in direct response to the growing number of injuries and fatalities suffered in traffic accidents. The primary goal of the Safety Act was therefore, as stated in the Act, "to reduce traffic accidents and deaths and injuries to persons resulting from traffic accidents." 15 U.S.C. § 1381 (1966).[9] This purpose was accomplished by establishing minimum safety standards for automobiles sold in the United States. See 15 U.S.C. § 1392(2) (defining safety guidelines as "minimum standards"). Because the Act's primary purpose of safety would only be enhanced by this Court's recognition of the claim presented today, I must respectfully dissent from the majority's decision to find preemption in the face of a savings clause which expressly preserves the common law liability of automobile manufacturers and a state's ability to mandate a higher standard of safety for products sold within its borders.[10] Apparently, the majority is under the impression that even Miss. Code Ann. § 63-2-1 et seq., Mississippi's mandatory seat belt law, requiring front seat occupants to buckle up, can now be preempted by federal law. Would this foreclose the Legislature from requiring on/off switches on air bags installed in any passenger vehicle?
¶ 53. The Safety Act expressly provides that "[c]ompliance with a Federal motor vehicle safety standard issued under this subchapter does not exempt any person from any liability under common law." 15 U.S.C. § 1397(k). This savings clause cannot be construed in any other way than to prevent the express preemption of state common law claims. Pokorny v. Ford Motor Co., 902 F.2d 1116, 1120-21 (3d Cir.1990); Wilson v. Pleasant, 660 N.E.2d 327, 330 (Ind. 1995). Indeed, the Ohio Supreme Court's recent decision in Minton v. Honda of America Manufacturing, Inc., 80 Ohio St.3d 62, 684 N.E.2d 648 (1997), recognizes just how clear and unambiguous Congress was in its intent to preserve state law remedies for injuries resulting from defective automobiles. Looking at the legislative history of the Safety Act, the Minton court found:
Specifically, the Senate Report states that the "[f]ederal minimum safety standards need not be interpreted as restricting State common law standards of care. Compliance with such standards would thus not necessarily shield any person from product liability at common law." S.Rep. No. 1301, 89th Cong., 2d Sess. 12, reprinted in 1966 U.S.Code Cong. & Adm. News 2709, 2720. The House Committee Report also provides that Congress "intended, and this subsection specifically establishes, that compliance with safety standards is not to be a defense or otherwise to affect the rights of parties under common law particularly those relating to warranty, contract, and tort liability." (Emphasis added.) H.R. Rep. 1776, 89th Cong., 2d Sess. 24 (1966). Remarks by members of Congress also support the view that, notwithstanding *446 the preemption clause, the savings clause was intended to preserve all state tort damage actions. See, e.g., 112 Cong. Rec. 20599 (1966) (remark by Senator Magnuson that "[t]he Senate conferees accepted the House provision that compliance with Federal standards does not exempt any person from common law liability. This provision makes explicit, in the bill, a principle developed in the Senate report. This provision does not prevent any person from introducing in a lawsuit evidence of compliance or noncompliance with Federal standards. No court rules of evidence are intended to be altered by this provision."). Indeed, nowhere in the Safety Act's history have we uncovered even the slightest hint that the preemption clause was intended to foreclose any state common-law duties enforced by damage actions.
Accordingly, we conclude that the Safety Act should not be construed as manifesting an intent by Congress to preempt appellant's air bag claim. Therefore, we hold that appellant's claim is not expressly preempted by the Act.
Minton, 80 Ohio St.3d at 73, 684 N.E.2d at 657. See also Munroe v. Galati, 189 Ariz. 113, 938 P.2d 1114, 1119 (1997); Drattel v. Toyota Motor Corp., 662 N.Y.S.2d 535, 536-537, 231 A.D.2d 326 (1997).
¶ 54. Implied conflict preemption may exist only where both state and federal requirements cannot be simultaneously met, or where state law defeats the purpose of the federal law. Freightliner Corp. v. Myrick, 514 U.S. 280, 286-87, 115 S.Ct. 1483, 1487, 131 L.Ed.2d 385 (1995). There is a presumption against preemption where federal law touches on the areas of law traditionally governed by the states. CSX Transportation, Inc. v. Easterwood, 507 U.S. 658, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993); California v. ARC America Corp., 490 U.S. 93, 109 S.Ct. 1661, 104 L.Ed.2d 86 (1989). Further, this "presumption against the preemption of state police power regulations should be applied not only to determine whether Congress intended any preemption, but also to determine the scope of any express preemption ... consistent with both federalism concerns and the historic primacy of state regulation of matters of health and safety." Medtronic, Inc. v. Lohr, ___ U.S. ___, ___-___, 116 S.Ct. 2240, 2259-50, 135 L.Ed.2d 700 (1996). Common law liability is certainly one of those areas traditionally governed by the states. See Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 ("historic police powers of the States were not to be superseded by ... [federal law] unless that was the clear and manifest purpose of Congress"), rev'd on other grounds, 331 U.S. 247, 67 S.Ct. 1160, 91 L.Ed. 1468 (1947).
¶ 55. Congressional intent notwithstanding, any implied conflict analysis must begin with the presumption that the Coopers' common law liability claim is not preempted by federal law. Even disregarding this presumption, the majority's attempt to illustrate an actual conflict between the air bag claim presented by the Coopers and the federal guidelines is not persuasive. The Coopers' claim lies within an entirely separate and distinct realm from any claim based on a violation of the Safety Act. The standards set forth in the Safety Act are "minimum standard[s] for motor vehicle performance, or motor vehicle equipment performance." 15 U.S.C. § 1392(2). Standards of safety which go beyond the minimum do not present a conflict. This is demonstrated in the reality that General Motors could have simultaneously complied with the Safety Act and an air bag requirement, even if such a mandate under state law existed. As the Supreme Court of Arizona recently stated in finding no express preemption and no conflict which would serve impliedly to preempt any state law air bag claims,
The automobile safety standards are minimum, mandatory requirements, implemented through authority granted by Congress to "reduce the number of deaths of vehicle occupants, and the severity of injuries, by specifying vehicle crash-worthiness requirements .. . and by specifying equipment requirements for active and passive restraint systems." FMVSS 208 S2. Common-law liability does not impose mandatory requirements that manufacturers must follow; such exposure to possible liability, rather, allows manufacturers to make *447 choices about cost. Even if a jury were to find the manufacturer liable for failing to provide air bags in addition to the passive restraints required by the minimum standard, the manufacturer would not be required to include that safety feature in its cars. If Plaintiffs' claim is successful, the imposition of liability would simply compensate them for injuries caused by General Motors' choice not to do something the standards permitted it to do.
Munroe v. Galati, 189 Ariz. 113, 938 P.2d 1114, 1120 (1997).
57 56. The fact remains, therefore, that a finding of common law liability by a jury would still leave General Motors with the same flexibility of choices found in the Safety Act today. While a finding of liability might make it more attractive for General Motors to choose the option which did in fact include the air bag, the car manufacturer could still choose one of the other options bearing in mind that this choice, under state law, might result in having to compensate for some of the injuries resulting from the absence of air bags. See Gingold v. Audi-NSU-Auto Union, 389 Pa.Super. 328, 567 A.2d 312, 326 (1989) (noting that common law liability is different from regulation in that common law liability does not require tortfeasors to change behavior); Hernandez-Gomez v. Leonardo, 185 Ariz. 509, 518, 917 P.2d 238, 247 (1996)(observing that minimum safety standards are uniformly applicable to all cars manufactured, "whereas tort liability operates to encourage behavior but not require it."). The claim presented today simply does not qualify as a regulation which abolishes a manufacturer's flexibility to choose among the three federal alternatives of safety measures; it is merely a request by the Coopers to allow a jury to determine whether General Motors breached the standard of care required of every other manufacturer who chooses to do business in this state. Consequently, despite the majority's strained attempt to so find, the Coopers' claim presents no actual conflict with the Safety Act.
¶ 57. Nor does the Coopers' claim thwart the primary goal of the Safety Act. Provided that the air bag claim was presented and found viable by the jury, the imposition of a higher standard on automobile manufacturers and their products sold in our State would serve only to enhance the Safety Act's stated purpose of reducing traffic injuries and saving lives. Common law liability undoubtedly would complement the original intent of Congress to reduce the loss of life in traffic accidents. See Larsen v. General Motors Corp., 391 F.2d 495, 506 (1968) (finding that Safety Act was intended to coexist with common law liability since common law liability can fulfill changing needs of society until legislature imposes higher standards). In its conclusion that the imposition of liability in this case would conflict with federal policy to give manufacturers leeway in their decision whether to install air bags, the majority opinion loses sight of, and actually frustrates, the primary intent of the Safety Act.
¶ 58. Given the presumption against preemption, the majority is misguided in its attempt to find an actual conflict between state law and the federal scheme. In reality, the Coopers' common law liability claim and the Safety Act exist in harmony to protect the safety of our citizens and hold car manufacturers to the same standard of care required of other entities whose products are sold in this State. Because the present claim neither conflicts with federal guidelines nor undermines the goal of the Safety Act, the application of implied preemption in this case fails at its most basic theoretical level. See English v. General Electric Co., 496 U.S. 72, 78-79, 110 S.Ct. 2270, 2274-75, 110 L.Ed.2d 65 (1990) (implied preemption exists where it is "impossible for a private party to comply with both state and federal requirements"); Hines v. Davidowitz, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941) (preemption exists where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress").
¶ 59. Although the preemption analysis need not go any further, the savings clause reveals the clear intent of Congress to allow the coexistence of the Safety Act and all common law liability actions. Minton, 80 Ohio St.3d at 73, 684 N.E.2d at 657; Tebbetts v. Ford Motor Co., 140 N.H. 203, 665 A.2d 345, 347-48 (1995), cert. denied, ___ U.S. *448 ___, 116 S.Ct. 773, 133 L.Ed.2d 726 (1996)(discussing legislative history of Safety Act and concluding that it was expressly determined that compliance with federal standards should not prevent product liability at common law). Similar provisions in other federal laws have likewise been found to preserve all liability actions at common law. Wilson, 660 N.E.2d at 335 (referring particularly to savings clauses contained in the Comprehensive Smokeless Tobacco Health Education Act of 1986 and National Manufactured Housing Construction and Safety Act).
¶ 60. The majority mistakenly equates the Coopers' claim as punishment for something that federal law authorizes. Allowing this claim to go to the jury would not penalize General Motors for "choosing a federally provided option;" it merely would present to a jury the issue of whether General Motors should have done more to meet the standard of care required in our State. Jury resolution should never be viewed by the judiciary as punishment. It is one of the foundations of our Constitution. Anyone injured in this state is provided a "remedy by due course of law." Mississippi Constitution of 1890, art. III, § 24. Whether General Motors ultimately should be liable for failing to install air bags is irrelevant to the discussion. A finding against preemption merely mean that the Coopers would be given the opportunity to present their claim to the jury. See Gingold v. Audi-NSU-Auto Union, 389 Pa.Super. 328, 567 A.2d 312, 326 (1989)(jury is still permitted to reject the negligence and products liability claims associated with failure to install air bags).
¶ 61. Where the claim presented today merely supplements and enhances the purpose of the Safety Act which makes it unmistakably clear that it does not occupy the field of common law liability, it is incredible that the majority rejects the presumption against federal preemption. Instead, it portends to play "follow the leader" in what it blindly perceives to be the "majority" view toward preemption. Regardless of any "trend" the majority and General Motors seem to have detected in preemption cases, the well-reasoned state court decisions in Minton and Munroe clearly articulate the desires of Congress in passing the Safety Act. These decisions further are consistent with the Fifth Circuit's finding in Perry v. Mercedes Benz of North America, Inc., 957 F.2d 1257 (5th Cir.1992), that a products liability claim arising from a faulty air bag was neither expressly nor inferentially preempted by the Safety Act. Today's decision serves to bar not only the Coopers' complaint, but improperly denies jury consideration of cases arising from the increasing number of deaths and serious injuries suffered by children and adults of smaller frame or statue from air bag deployment. Accordingly, I dissent.
SULLIVAN, P.J., and BANKS, J., join this opinion.
NOTES
[1] Section recodified at 49 U.S.C § 30103(e)(1994).
[2] Section recodified at 49 U.S.C. § 30103(b)(1994).
[3] Section recodified as 49 U.S.C. § 30124 (1994).
[4] In addition, it now appears that the Pennsylvania Superior Court has done an about face on recognizing these type of actions. Cellucci v. General Motors Corp., 450 Pa.Super. 438, 676 A.2d 253 (1996) (overruling Gingold and finding that recovery on a "no airbag" claim would effectively remove the element of choice explicitly provided in Safety Standard 208, and thereby pose an actual conflict with federal law). Cellucci held that as broad as the language in § 1397(k) is, it cannot properly be read to preserve common law actions such as Cellucci's that would effectively subvert a federal statutory or regulatory scheme, and that the better approach is to construe the savings clause to permit only those lawsuits that do not conflict with or undermine the federal scheme.
[5] The problem is that one state minimizes the importance of imposing liability for failure to install device (A) because it may only cost a few hundred dollars more. Another state has the same mentality in regard to device (B). Yet, another state engages in imposing liability for failure to install device (C). In the end, all three of these judgments are binding on a national automobile manufacturer, and in an effort to curb liability, the manufacturer will install products (A), (B), and (C), and the price of the product is increased significantly, not by just a few hundred dollars.

The real underlying issue is not how much or how little an air bag costs. The heart of the matter is that these kind of "failure to install" products liability claims result in inflating the cost of certain products, which are ultimately borne by consumers, not all of whom can afford 007's BMW Z3. Our compassion goes beyond just the injured person; it extends to all those who work for a living and would like a reasonably safe product at a reasonable price.
[6] After the gradual phase-in of air bags started, the following deficiencies were discovered. For example, in one automobile, the gas which inflated the air bag, caught on fire because of an unaccounted for electrical spark. The air bag caused serious burns. In another vehicle, the air bag inflated and almost smothered an infant riding in the passenger seat. Yet, in many more vehicles, air bags accidentally popped out due to either an inadvertent caressing of the steering wheel or sometimes, unknown reasons. The injuries ranged from loss of sight to lacerations of the face. See Debbs v. Thiokol Corp., No. Civ. A. 93-0082, slip op. at 1 (E.D. Pa. June 4, 1993) (WL 190872); Stemmons v. Toyota Tsusho Am., Inc., 802 F. Supp. 195 (N.D.Ill. 1992); Kevin Clemens, Warning  Air Bags Can Kill Children, Automobile, Sept. 1993, at 24.

Whenever, a state law recognizes a claim for the failure to install an air bag, implicit in such a holding is a rule of law mandating compulsory air bags. Thus, in light of the above air bag deficiencies discovered during the gradual phasein/scientific development period, if we were to recognize a state law claim for failure to install an air bag, then we would be placing automobile manufacturers "between a rock and a hard place". This we refuse to do. Scientific development is a good thing, and public policy should encourage it!
[7] The concurrence in Cellucci remarked that individual consumers should pay the premium required for any desired safety enhancing item:

Celucci's [sic] argument that the availability of the air bags placed upon GM the duty to incorporate them into the design of its car, regardless of the federal safety standards, discounts the consumer's ability to `design' his or her car to meet a certain safety level beyond that required under federal law. In today's market, the consumer is, in the sense of safety options, a designer. The consumer who wishes protection beyond that required by federal law can obtain that protection for a cost. Other safety options, such as side air bags, roll bars, steel cages, even bullet proof windows, are available and can be incorporated if the consumer is willing to pay a higher price. Mere availability, however, is insufficient to create a cause of action in products liability.
Cellucci v. General Motors Corp., 450 Pa.Super. 438, 676 A.2d 253 (1996).
[8] This footnote was added to reflect the events that have transpired in this case and those who have joined this dissent have not been asked, and should not be considered to have joined it, too. On several occasions throughout the course of this appeal, General Motors has begged this Court's indulgence to consider as supplemental authority for this position a variety of unpublished lower court orders and decisions. The last circulated opinion in this case quoted heavily from an unpublished district court order, which chastised its own court in Cipollone, and supported its position on preemption with extensive string cites, including numerous unpublished orders and opinions provided by the Appellee, in violation of M.R.A.P. 35-A(c). After a last minute en banc decision was made to hand the case down immediately, and the opinion was hurriedly modified, express representations were made to this suite that no changes had been made and no opportunity was provided to vote on, or even see, the revisions made to the opinion. Although this dissent originally addressed the substantive issue raised by the majority's reliance on unpublished authority in addition to the preemption issue, we were not provided with a copy of changes made or even extended the courtesy of a few brief moments in which to modify our dissent to comport with the new majority. It is unfortunate that our State's highest court chooses to do business this way.
[9] California appears to stand alone in finding that Congress' goal in passing the Safety Act was "national uniformity" rather than vehicle safety. See Harris v. Ford Motor Co., 110 F.3d 1410 (9th Cir.1997).
[10] It bears note that this Court previously denied a petition for interlocutory appeal from General Motors urging us to hold that a claim similar to that raised by Cooper was preempted by the Safety Act. General Motors Corp. v. Bennett, No. 94-M-1032 (April 17, 1995).