# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2000-CT-01124-SCT

*BILLY WAYNE FRITH AND WANDA FRITH AS
PARENTS AND NATURAL GUARDIANS OF JOSHUA
BRENT FRITH, A MINOR*

*v.*

*BIC CORPORATION*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 06/20/2000 |
| TRIAL JUDGE: | HON. V. R. COTTEN |
| COURT FROM WHICH APPEALED: | SCOTT COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | DANA J. SWAN |
| ATTORNEYS FOR APPELLEE: | JEREMY LUKE BIRDSALL |
| | D. COLLIER GRAHAM, JR. |
| | MICHAEL B. WALLACE |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED AND THE JUDGMENT OF THE TRIAL COURT IS AFFIRMED - 01/15/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1.    Today's case is before us based on our prior grant of a writ of certiorari on the petition filed by the BIC Corporation as a result of the Court of Appeals' reversal of the trial court's grant of summary judgment in favor of BIC. Finding that the Court of Appeals erred, we reverse the judgment of the Court of Appeals and affirm the grant of summary judgment, and the final judgment consistent therewith, as entered by the Circuit Court of Scott County.

**FACTS AND PROCEEDINGS IN THE TRIAL COURT**

¶2.     On December 19, 1994, Joshua Brent Frith (Joshua), who was ten years old at the time of the unfortunate incident giving rise to this action, was playing alone in his backyard in Morton, Mississippi. That day Eva Odom, Joshua's maternal grandmother who lived in the home with Joshua and his parents, was in charge of Joshua's care. Joshua found a disposable cigarette lighter in the drainage ditch behind his house. Not surprisingly, Joshua was curious and attempted to operate the lighter. Although Joshua's persistent flicking of the lighter produced no flame, it did produce sparks. Joshua continued to flick the lighter as he walked by a gasoline container located near the rear of his house. The resulting sparks produced an explosion which caused Joshua to receive severe burns. Although the lighter was never recovered, Joshua believed the lighter to be one commonly referred to as a "BIC lighter." In fact, Joshua would later identify an exemplar lighter, identified as a J-26 Model Child Guard lighter manufactured by the BIC Corporation (BIC), as being similar to the one he was operating on the day of the accident.

¶3.     Because of this accident, Joshua's parents, Billy Wayne and Wanda Frith, filed suit in the Circuit Court of Scott County, seeking damages on negligence and products liability theories. The named defendants were BIC (the manufacturer of the cigarette lighter); Gott a/k/a Gott Corporation and Rubbermaid Specialty Products, Inc. (the entities believed to have manufactured the gasoline container); and, the Estate of Eva Odom. Mrs. Odom, who was looking after Joshua on the day of the accident, died prior to the commencement of the lawsuit. The defendants (save the Odom Estate) removed this case to federal court on the allegation that Eva Odom's estate had been fraudulently joined as a party defendant for the sole purpose of defeating diversity jurisdiction. In due course, the Friths filed a motion in the United States District Court for the Southern District of Mississippi to have the case remanded back to state court. Judge William H. Barbour, Jr. determined that while the Friths' claims against BIC were preempted by

2

federal law, the federal court lacked removal jurisdiction to enforce federal preemption inasmuch as the Estate of Mrs. Odom (a necessary party) had failed to join in the petition for removal to federal court. *Frith v. BIC Corp*., Civ. Ac. No. 3:98CV280BN (S.D. Miss. 1998).

¶4.    Upon remand to state court, BIC filed a motion for summary judgment, alleging inter alia that the Friths' claims, which were state-based common law claims,  were preempted by federal law.  The circuit court agreed and granted summary judgment in favor of BIC.  Subsequent to the entry of the Memorandum Opinion and Order granting summary judgment, the trial court likewise entered its final judgment in favor of BIC.  *See* Miss. R. Civ. P. 54(b).   Aggrieved by the circuit court's adverse judgment, the Friths appealed to this Court, which assigned the case to the Court of Appeals for disposition.  The trial court stayed any further proceedings against the remaining defendants until such time as the issues presented on this appeal had been resolved.

## PROCEEDINGS BEFORE THE COURT OF APPEALS

¶5.    By the time this case reached the Court of Appeals, the Friths had abandoned their common law negligence claim and were pursuing only their strict liability claim under a products liability theory.  The Court of Appeals, in a 7-3 decision, initially affirmed the trial court's grant of summary judgment in favor of BIC.  However, the Court of Appeals subsequently granted the Friths' motion for rehearing, withdrew its original opinion, and substituted a new opinion in its stead. In its substituted opinion, the Court of Appeals, by a 6-3-1 vote,  reversed the trial court's grant of summary judgment and remanded the case for a trial on the merits.  *Frith v. BIC Corp.*, 852 So.2d 592 (Miss. Ct. App. 2003).  After the Court

of Appeals denied BIC's motion for rehearing, this Court granted BIC's cert. petition to consider the federal preemption issue.

## STANDARD OF REVIEW

¶6. We are called upon today to determine whether the trial court's grant of summary judgment in favor of BIC was appropriate based on our civil procedure rules [Miss.R.Civ.P. 56] and the applicable case law. This Court applies a de novo standard of review on appeal from a grant of summary judgment by the trial court. *Hudson v. Courtesy Motors, Inc.*, 794 So.2d 999, 1002 (Miss. 2001); *Jenkins v. Ohio. Cas. Ins. Co.*, 794 So.2d 228, 232 (Miss. 2001); *Russell v. Orr*, 700 So.2d 619, 622 (Miss. 1997); *Richmond v. Benchmark Constr. Corp.*, 692 So.2d 60, 61 (Miss. 1997); *Northern Elec. Co. v. Phillips*, 660 So.2d 1278, 1281 (Miss. 1995). The proponent of a summary judgment motion bears the burden of showing that there are no genuine issues of material fact such that he is entitled to judgment as a matter of law. *Collier v. Trustmark Nat'l Bank*, 678 So.2d 693, 696 (Miss. 1996). The motion may not be defeated merely by responding with general allegations, but must set forth specific facts showing that issues exist which necessitate a trial. *Drummond v. Buckley*, 627 So.2d 264, 267 (Miss. 1993). After viewing evidentiary matters in a light most favorable to the nonmoving party, this Court will only reverse the decision of the trial court if triable issues of fact exist. *Travis v. Stewart*, 680 So.2d 214, 216 (Miss. 1996). *See also* *Brown v. Credit Ctr., Inc.*, 444 So.2d 358, 361-65 (Miss. 1983), for a thorough discussion of our summary judgment procedure.

## DISCUSSION

¶7. In order to resolve the issue of the appropriateness of the Court of Appeals' reversal of the trial court's grant of summary judgment, we must consider whether federal preemption precludes the Friths'

4

state law claims. Of the various claims initially viable before the trial court, the crucial claim asserted against BIC is that of a design defect in a disposable lighter resulting in an allegedly insufficient child resistant product which enabled a ten-year-old boy to use the lighter in such a way as to produce sparks which ignited fumes from a nearby gasoline container.

### A. The Consumer Product Safety Commission.

¶8.     The Consumer Product Safety Commission (CPSC), a federal commission, previously underwent a comprehensive process to establish uniform child resistance standards for disposable lighters which would most effectively and feasibly achieve the federal safety objectives of reducing fire-related injuries and deaths involving children. After considering many alternatives, the CPSC made an obviously knowing and conscious regulatory decision intended to encourage public acceptance and use of child resistance lighters by adult consumers. The CPSC determined that it was certainly not incomprehensible that it could create safety enhanced standards so strict that the lighters would prove too difficult to use by adult consumers who might then choose less safe alternatives to produce fire (i.e., matches).

### B. The Consumer Product Safety Act.

¶9.     The Consumer Product Safety Act (CPSA), is codified as Title 15, United States Code, §§ 2051-2083. The CPSA contains a preemption clause:

> Whenever a consumer product safety standard under this chapter is in effect and applies to a risk of injury associated with a consumer product, no State or political subdivision of a State shall have any authority either to establish or to continue in effect any provision of a safety standard or regulation which prescribes any requirements as to the performance, composition, contents, design, finish, construction, packaging, or labeling of such product which are designed to deal with the same risk of injury associated with such consumer product, unless such requirements are identical to the requirements of the Federal standard.

15 U.S.C. § 2075(a) (1997).

## C. The CPSC Regulations.

¶10.    In order to implement the CPSA, the CPSC enacted certain regulations. 16 C.F.R. §§ 1210.1-

1210.20. 16 C.F.R. § 1210.3 states in pertinent part:

> (a) A lighter subject to this part 1210 shall be resistant to successful operation by at least
> 85 percent of the child test panel when tested in the manner prescribed by 1210.4.[1]
>
> (b) The mechanism or system of a lighter subject to this part 1210 that makes the product
> resist successful operation by children must:
>
>> (1) reset itself automatically after each operation of the ignition mechanism
>> of the lighter,
>> (2) not impair safe operation of the lighter when used in a normal and
>> convenient manner,
>> (3) be effective for the reasonable expected life of the lighter, and
>> (4) not be easily overridden or deactivated.

## D. Federal Court Action Upon Removal.

¶11.    Subsequent to removal to the United States District Court for the Southern District of Mississippi,

Judge Barbour, en route to remanding the case to state court because all defendants did not join in the

notice of removal, found that the Friths' "cause of action for design defect of the cigarette lighter necessarily

`arises under' federal law and presents a federal question;" however, Judge Barbour likewise found that

inasmuch as he was constrained to remand the case, the state court would be "perfectly capable of deciding

---

[1]We also find pertinent the following provisions of 58 Fed. Reg. 37554, at 37578:

> The child-resistant lighter test results clearly support the feasibility of an
> acceptance criteria of 85 percent. The data do not support the feasibility
> of an acceptance criteria of 100 percent. A lighter that no child under 5
> could operate would be very difficult for adults to operate as well. In
> order for child-resistant lighters to address the risk of injury most
> effectively, adults must be willing to use them. If adults are unable to use
> child-resistant lighters, they may switch to available non-child resistant
> lighters.

6

the federal questions presented in this case." We also find the following provisions of Judge Barbour's order to be enlightening:

> When determining whether a cause of action has been preempted by federal law, "the purpose of Congress is the ultimate touchstone." Cipolone v. Liggett Group, 505 U.S. 504, 516, 112 S.Ct. 2608, 2619, 120 L.Ed.2d 407 (1992) (quoting Retail Clerks v. Schermerhorn, 375 U.S. 96, 103, 84 S.Ct. 219, 222, 11 L.Ed.2d 179 (1963)). The intent of Congress may be "explicitly stated in the statute's language or implicitly contained in its structure and purpose." Cipolone, 505 U.S. at 516 (citing Jones v. Rath Packing Co., 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977)).
>
> > In the absence of an express congressional command, state law is pre-empted if that law actually conflicts with federal law, see Pacific Gas & Elec. Co. v. State Energy Resources Conservation and Development Comm'n., 461 U.S. 190, 204, 103 S.Ct. 1713, 1722, 75 L.Ed.2d 752 (1983), or if federal law so thoroughly occupies a legislative field "as to make reasonable the inference that Congress left no room for the States to supplement it."
>
> Cipolone, 505 U.S. at 516 (quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)).

**********

> The Court also notes that Defendants have alleged, and Plaintiffs have not rebutted, that the design of the J-26 Model Child Guard cigarette lighter at issue in this lawsuit is in full compliance with the child resistance safety standards of the CPSC regulations for cigarette lighters enacted by the CPSC. To apply state or common law standards to the design of this cigarette lighter could subject BIC to two different regulations of the same subject: the federal regulations of the CPSC and the higher common law standard urged by the Plaintiff. Clearly, this was not what Congress intended when it passed the CPSA. The Court finds that Plaintiff's cause of action for design defect of the cigarette lighter necessarily 'arises under' federal law and presents a federal question.

*Frith v. BIC Corp*., Civ. Ac. No. 3:98CV280BN, 15-16, 20-21 (S.D. Miss. 1998). Again, notwithstanding Judge Barbour's finding on the federal preemption issue, he left viable that issue to be determined upon remand by the state court judge.

### E. State Court Action Upon Remand.

7

¶12. Upon remand, the circuit court granted BIC's subsequently filed motion for summary judgment, and in so doing, the circuit court held, inter alia:

> Accordingly, the Court finds that the subject BIC lighter complies with an established federal safety standard for child resistancy and that Plaintiffs are prohibited from imposing upon Defendant BIC through a state law action a different child resistancy standard which conflicts with federal safety objectives, it having been clearly determined that the federal authority has pre-empted the field.

### F. This Court's Prior Analysis of Federal Preemption.

¶13. This Court has previously analyzed federal preemption and state law claims. In ***Cooper v. General Motors Corp.***, 702 So.2d 428 (Miss. 1997), we were confronted with a products liability action brought against an automobile manufacturer under a design defect theory as a result of the manufacturer's failure to install air bags in a 1984 vehicle. We acknowledged in ***Cooper***, that there were only three ways in which federal preemption might occur: "(1) where Congress explicitly preempts state law; (2) where preemption is implied because Congress has occupied the entire field, or (3) where preemption is implied because there is an actual conflict between federal and state law." ***Id***. at 434 (citing ***English v. General Elec. Co.***, 496 U.S. 72, 78-79, 110 S.Ct. 2270, 2274-75, 110 L.Ed.2d 65 (1990); ***Schneidewind v. ANR Pipeline Co.***, 485 U.S. 293, 108 S.Ct. 1145, 99 L.Ed.2d 316 (1988)).

After an exhaustive discussion of the history of the National Traffic and Motor Vehicle Safety Act (NTMVSA), and the case law in other state and federal jurisdictions analyzing federal preemption and state law claims, we used an implied preemption analysis and thus held that the NTMVSA preempted the air bag claim, noting that implied preemption may exist only where both state and federal requirements cannot be simultaneously met, or where state law defeats the purpose of the federal law. "The cornerstone of

preemption is that a state law which conflicts with the federal law is invalid under the Supremacy Clause."

702 So.2d at 434 (citing *Freightliner Corp. v. Myrick*, 514 U.S. 280, 286-87, 115 S.Ct. 1483, 131 L.Ed.2d 385 (1995)). In so holding, we stated, inter alia:

> While one might look at [Federal Motor Vehicle Safety Standards] as having no preemptive effect because it is a minimum standard, and thereby, freeing a state to exceed its requirement, FMVSS 208 differs in that it explicitly offers an option to manufacturers not to include air bags, and thus, failure to include air bags in automobiles cannot give rise to state liability without conflicting with the federal regulation. Thus, the third kind of preemption (implied preemption through actual conflict) is applicable to the issue at bar. Accordingly, this Court will filter this case through an implied preemption grid.
> **********
> Allowing common law liability under Mississippi law for failure to install an air bag punishes manufacturers for exercising a federally sanctioned choice. It would create an actual and definitive conflict. Thus, the trier was not in error for granting partial summary judgment on the preemption claim.

702 So.2d at 434-35.

### G. The United States Supreme Court's Prior Analysis of Federal Preemption.

¶14. After our decision in *Cooper*, the United States Supreme Court was likewise confronted with the issue of a federal preemption analysis in a case involving state law tort claims that the subject vehicle was defective because the vehicle was not equipped with air bags and that such defect contributed to the victim's injuries and damages caused in a vehicular accident. In *Geier v. American Honda Motor Co.*, 529 U.S. 861, 120 S.Ct. 1913, 146 L.Ed.2d 914 (2000), the U.S. Supreme Court likewise considered the applicability of the NTMVSA. In *Geier*, the plaintiffs argued that manufacturers had the duty to install air bags in all 1987 vehicles. The Court held:

> FMVSS 208 sought a gradually developing mix of alternative passive restraint devices for safety-related reasons. The rule of state tort law for which [plaintiffs] argue would stand as an "obstacle" to the accomplishment of that objective. And the statute foresees the application of ordinary principles of pre-emption in cases of actual conflict. Hence, the tort action is pre-empted.

9

529 U.S. at 886, 120 S.Ct. at 1928.

### *H. Our Analysis of Federal Preemption in Today's Case.*

¶15.    We now keep in mind these enunciated principles and rules of law as we turn to the case sub judice.   A review of the record in this case, including the pleadings, reveals that the common law standard which the Friths would have us apply to BIC is a higher standard than that established by federal law.   In essence the Friths argue that BIC should be held to the standard of producing a lighter which a 10-year-old child cannot use.   In an effort to undergird their argument, the Friths assert that while the States are no doubt obligated to apply what the Friths perceive to be the minimum standard established by federal law, the States are not prohibited from establishing a higher standard which would further protect their consumer-citizens.   Unfortunately, the Court of Appeals, in its substituted opinion, accepted the Friths' argument and erroneously relied on 15 U.S.C. § 2075(b) which provides:

> Subsection (a) of this section does not prevent the Federal Government or the government of any State or political subdivision of a State from establishing or continuing in effect a safety requirement applicable to a consumer product for its own use which requirement is designed to protect against a risk of injury associated with the product and which is not identical to the consumer product safety standard applicable to the product under this chapter if the Federal, State, or political subdivision requirement provides a higher degree of protection from such risk of injury than the standard applicable under this chapter.

¶16.    We know without question that the Court of Appeals relied almost exclusively on the applicability of 15 U.S.C. § 2075(b) because of the following language contained in its opinion:

> The federal standard is a minimum standard and any state may establish or continue a safety requirement so long as that safety requirement provides a higher degree of protection than the federal standard.  15 U.S.C.A. § 2075(b).
>
> **********
>
> The applicable federal safety standard is that lighter companies are to implement safety devices on the lighters so that they cannot be successfully used by children five years of age.  16 C.F.R. § 1210.1.  The standard proposed by the Friths is a higher standard than that established by federal law.   Based on the dictates of 15 U.S.C.A. § 2075(b), state and federal law would not conflict as the state law would provide more protection to the

10

product consumer. The trial court's grant of summary judgment in favor of BIC Corporation finding that federal law preempted state law is reversed and remanded for new trial.

852 So.2d at 593. However, what the Friths, and ultimately the Court of Appeals, failed to consider is that the legislative history reveals that 15 U.S.C. § 2075(b) applies not to products for use by the general adult-consumer public, but instead only to products to be used by the state or local governmental entities. There is voluminous documentation to this effect, including the Code of Federal Regulations. 16 C.F.R. § 1061.3 states:

> (a) The [Consumer Product Safety] Commission's statutory preemption provisions provide, generally, that whenever consumer products are subject to certain Commission statutes, standards, or regulations, a State or local requirement applicable to the same product is preempted, i.e., superseded and made unenforceable, if both are designed to protect against the same risk of injury or illness, unless the State or local requirement is identical to the Commission's statutory requirement, standard, or regulation. *A State or local requirement is not preempted if the product it is applicable to is for the State or local government's own use and the requirement provides a higher degree of protection than the Commission's statutory requirement, standard, or regulation.*

(emphasis added). We are dealing today with a BIC lighter which was manufactured for use by the general adult public – not for use by the State of Mississippi, Scott County, or the City of Morton. Thus, 15 U.S.C. § 2075(b) is inapplicable to the Friths' case.

¶17. In the end, we are dealing not with an express Congressional preemption, but instead a question of implied Congressional preemption because of a potential conflict between federal law and our state law. Thus we must filter the Friths' case "through an implied preemption grid." *Cooper*, 702 So.2d at 434. The record before us unequivocally reveals a genuine effort by Congress and federal regulators to reach a balance by sanctioning child-resistant lighters not too difficult for adult operation. A more stringent standard would no doubt frustrate the objective of the disposable lighter regulations. In today's case, the

11

federal standards applicable to lighters were intended to make it as difficult as feasibly possible for a five-year-old child to use. If a state law claim succeeded in imposing stricter child-resistant requirements for disposable lighters such that a ten-year-old child could not operate the lighter to produce a flame or sparks, then the lighter would be sufficiently difficult for an adult to operate, thus causing adults to resort to less safer methods of producing fire, such as matches. The end result would be that the more stringent state standard would stand as an obstacle to the accomplishment of the federal objective of producing for the adult consumer a usable lighter which was yet as child-resistant as feasible for children five years of age and younger. If we were to adopt the Friths' standard of requiring lighters to be designed in such a way as to prevent even so much as a spark from being produced by the lighter when in the hands of a ten-year-old child, we would be adopting a state law which would no doubt undermine and frustrate the federal objective and thus conflict with federal law. This we refuse to do.

## CONCLUSION

¶18. For the foregoing reasons, the circuit judge in this case was eminently correct in his federal preemption analysis which caused him to conclude that the Friths' child-resistant standard conflicted with federal safety objectives and standards and that the Friths' state law claims were thus preempted by federal law. The Court of Appeals erred in concluding otherwise. Our decision today is consistent with our previous pronouncement in *Cooper* and the United States Supreme Court's decision in *Geier*.

¶19. Accordingly, we reverse the judgment of the Court of Appeals and affirm the grant of summary judgment and entry of a final judgment in favor of BIC by the Scott County Circuit Court.

¶20. **THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED AND THE JUDGMENT OF THE TRIAL COURT IS AFFIRMED.**

**PITTMAN, C.J., SMITH AND WALLER, P.JJ., COBB AND DICKINSON, JJ., CONCUR. GRAVES, J., CONCURS IN RESULT ONLY. EASLEY, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. DIAZ, J., NOT PARTICIPATING.**