# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2019-IA-01391-SCT

*NAVIENT CORPORATION AND NAVIENT
SOLUTIONS, LLC*

*v.*

*THE STATE OF MISSISSIPPI EX REL. LYNN
FITCH, ATTORNEY GENERAL*

DATE OF JUDGMENT:                              08/20/2019
TRIAL JUDGE:                                   HON. DENISE OWENS
TRIAL COURT ATTORNEYS:                         JACQUELINE H. RAY
                                               GEORGE NEVILLE
                                               DONALD L. KILGORE
                                               A. LEE ABRAHAM, JR.
                                               CAROLYN GLASS ANDERSON
                                               JUNE PINEDA HOIDAL
                                               PATRICIA A. BLOODGOOD
                                               DANIEL T. LINDQUIST
                                               BETH ORLANSKY
                                               CHARLES OTIS LEE
                                               ROBERT McDUFF
                                               J. CARTER THOMPSON, JR.
                                               D. STERLING KIDD
                                               JENNIFER G. LEVY
                                               MICHAEL DAVID SHUMSKY
                                               NICKOLAS HALEN BARBER
                                               LAUREN N. BEEBE
                                               MICHAEL ROBERT KILGARRIFF
                                               KATHERINE ELIZABETH CANNING
                                               MARY C. MORGAN
                                               COREY OMER
                                               AMANDA DAVIDOFF
                                               DAVID H. BRAFF
COURT FROM WHICH APPEALED:                     HINDS COUNTY CHANCERY COURT

ATTORNEYS FOR APPELLANTS: J. CARTER THOMPSON, JR.
 D. STERLING KIDD
 MICHAEL D. SHUMSKY
 JENNIFER LEVY
 LAUREN BEEBE
 KATHERINE CANNING
 NICKOLAS BARBER
 MIKE KILGARRIFF
 PATRICK BROWN

ATTORNEYS FOR APPELLEE: OFFICE OF THE ATTORNEY GENERAL
 BY: TA'SHIA GORDON
  MARY JO WOODS
 PATRICIA A. BLOODGOOD
 CAROLYN G. ANDERSON
 JUNE P. HOIDAL
 ROBERT B. McDUFF
 BETH L. ORLANSKY
 CHARLES O. LEE
 A. LEE ABRAHAM, JR.

NATURE OF THE CASE: CIVIL - OTHER
DISPOSITION: AFFIRMED AND REMANDED - 03/25/2021
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE KITCHENS, P.J., COLEMAN AND GRIFFIS, JJ.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1. On July 17, 2018, the State filed its complaint against Navient Corporation and Navient Solutions, LLC (together, "Navient"), alleging that Navient's origination of high-cost, subprime loans and predatory practices while servicing student-loan borrowers in Mississippi violated the Mississippi Consumer Protections Act.

¶2. Navient moved to dismiss on two grounds: failure to state a claim and lack of venue. On August 20, 2019, the chancery court denied Navient's motion; Navient timely petitioned the Court for an interlocutory appeal. Now, Navient argues that federal law preempts the State's servicing claims and that injunctive relief under the Act does not apply because the alleged loan-origination misconduct ceased and cannot recur. We disagree and affirm the trial court.

### *The Complaint*

¶3. Under the "Attorney General's common law and *parens patriae* authority as well as statutory authority under" Mississippi Code Section 75-24-1, the State's complaint against Navient began by introducing Navient as the largest student-loan servicer in the United States. In addition, the complaint made clear that "federal question jurisdiction . . . is not invoked by the Complaint as it sets forth herein exclusively viable state law claims against [Navient]."

¶4. Describing the issues, the State alleged that Navient

> has harmed numerous student loan borrowers in Mississippi by (1) marketing risky and expensive subprime private student loans that it knew, or should have known were likely to default; and (2) while servicing federal student loans, making a host of misrepresentations, including steering borrowers into costly forbearances, instead of enrolling them into more affordable income-driven repayment plans.

¶5. Ultimately, the State set forth four counts of violations against Navient:

> **Count I:** Under the Mississippi Consumer Protections Act for unfairly and deceptively offering, marketing and originating risky,

expensive loans which had a high likelihood of default, among other unlawful conduct between 2000 and 2009;

**Count II:** Under the MCPA for numerous unfair and deceptive loan servicing practices between 2010 and the present;

**Count III:** For common law unjust enrichment, seeking disgorgement of increased revenues and profits resulting from deceptive and unfair offering and originating subprime, high cost loans to borrowers in spite of their high likelihood of default while failing to inform borrowers of this known high risk of default; and

**Count IV:** For Navient's unjust enrichment for its unfair and deceptive servicing conduct between 2010 and the present.

¶6. The history surrounding Navient, its predecessor, and the student-loan industry is dense, but, importantly, their business has been "offering, selling, marketing, and promoting student loans and servicing borrowers' student loans since at least 2000." From originating student loans to servicing them for repayment, Navient facilitated student loans across the nation, including in Mississippi. Although the State has alleged voluminous numbers of predatory practices, they are categorized into two areas: (1) the origination of student loans; and (2) the servicing of student-loan repayment.

### *Origination Claims*

¶7. The relevant period for the origination claims, which relate to Navient's deceptive and unfair private student-loan origination practices is between 2000 and 2009. Navient's predecessor set lending policies, marketed loans to Mississippi schools and student-loan borrowers, and funded and disbursed the loans. In 2014, Navient assumed responsibility for

4

its predecessor's liabilities resulting from the earlier practices. Overall, the complaint is permeated with allegations of predatory practices. The State emphasized their plea:

> The State believes that, after a reasonable opportunity for discovery, the evidence will likely show that: (1) there has been a profound impact on the financial lives of student loan borrowers in Mississippi who were deceptively sold risky subprime loans by the Defendants, (2) many borrowers have had to delay starting a family, (3) many borrowers have been unable to save for the down payment on a home, and (4) others have not been able to start their own business and actually apply the education for which they borrowed.

### *Servicing Claims*

¶8. The relevant period for the State's servicing claims concerning Navient directly is from 2010 to the present. During that time, Navient "utilized servicing policies, practices, and mechanisms affecting student loan borrowers all around the country, including Mississippi." Navient serviced more than $275 billion in federal student loans and is reputed as the largest servicer in the market.

¶9. The categories involved in the servicing section include (1) steering borrowing into costly forbearance rather than income-driven repayment, (2) systemic failures relating to recertification of income-driven repayment, (3) misrepresentations regarding cosigner release, and (4) repeated payment-processing errors.

¶10. Among others, the complaint details that "[u]ntil at least the fall of 2014, Navient's compensation policies for its customer service representatives incentivized them to push numerous borrowers into forbearance without adequately offering income-drive repayment plans to those borrowers, and in some cases, without even mentioning income-driven

5

repayment] plans at all." The complaint further examines numerous instances in which Mississippi borrowers were guided into forbearance rather than income-driven repayment.

¶11. In sum, the servicing section of the State's complaint is rife with alleged examples, testimony, and predatory practices surrounding Navient's servicing of student loans, forcing the consumer to bear the brunt of the consequences.

### *Chancery Court Order*

¶12. The chancery court denied Navient's joint motion to dismiss. As to venue, the chancery court found that "[t]he Mississippi Supreme Court recently rejected [Navient's arguments], ruling definitively that Miss. Code Ann. § 11-11-3, not § 75-24-9, is the proper venue provision when the State brings an action under the [Mississippi Consumer Protection Act] against foreign defendants."

¶13. The chancery court further rejected Navient's assertion that the State's claims failed to state a claim or were otherwise preempted by federal law. In denying Navient's order, the chancery court first emphasized the importance of federal deference concerning traditional state police powers:

> The legal fact that federal deference to state prerogatives is greatest with respect to traditional state police powers, which include protecting a state's residents from unfair and deceptive commercial practices, is axiomatic under the United States Constitution. Congress cannot issue any legislation, certainly coincidentally, that allows the federal government's power to supersede a state's police powers. If any of the defendants' arguments along those lines is accepted, that would be exactly the case.

6

¶14.   Next, using the plain meaning of the Mississippi Code Section 75-24-5, the chancery court found that "Miss. Code Ann. § 75-24-5's meaning, as envisioned by the Mississippi [s]tate legislature, succeeds in being broad enough to encompass issuance of credit and the making of loans."  The chancery court found that Section 75-24-9 authorized the State to assert its claims based on past conduct alone.  In the end, the chancery court found that "[i]t does not appear beyond a reasonable doubt that the [State] will be unable to prove any sets of facts in support of [its] claims."

### *The Appeal*

¶15.   Navient limited its interlocutory appeal to two issues:

> I.   The first issue presented on appeal is whether the [Higher Education Act] preempts the First Amended Complaint's state-law claims challenging Navient's alleged conduct in connection with its servicing of federal student loans.
>
> II.   The second issue presented on appeal is whether the First Amended Complaint's loan origination allegations properly state a claim under the MCPA, where the Attorney General's allegations relate exclusively to conduct that admittedly ceased at least 10 years ago and concededly cannot recur.

¶16.   For clarity, Navient's first issue concerns Counts II and IV from the State's complaint, and Navient's second issue relates to Count I.  Put simply, it is Navient's contention that under 20 U.S.C. § 1098g, the State's "federal loan servicing claims are expressly and impliedly preempted by federal law."

¶17.   Further, Navient asserts that the Court's recent decision in ***State ex rel. Fitch v. Yazaki N. Am., Inc.***, 294 So. 3d 1178, 1187 (Miss. 2020), in which the Court held that the

7

State's factual allegations failed to support that future conduct by the defendants would violate the Consumer Protection Act, bolsters their claim that the State failed to state a claim under the Mississippi Consumer Protections Act. Demonstrated below, Navient oversimplifies and misapplies both the federal statute and the *Yazaki* Court.

¶18. While the briefs from both parties contemplate other arguments, they were not asserted by Navient in its petition for interlocutory appeal. As such, we contemplate only the issues asserted in Navient's petition for interlocutory appeal.

**ANALYSIS**

¶19. The Court reviews a chancellor's decision to deny a motion to dismiss de novo. *Yazaki*, 294 So. 3d at 1184 (citing *Triplett v. S. Hens, Inc.*, 238 So. 3d 1128, 1130 (Miss. 2018)). A motion to dismiss "tests the legal sufficiency of the complaint[.]" *City of Meridian v. $104,960.00 U.S. Currency*, 231 So. 3d 972, 974 (Miss. 2017) (citing *Jourdan River Estates, LLC v. Favre*, 212 So. 3d 800, 802 (Miss. 2015)). "The motion should not be granted unless it appears beyond a reasonable doubt that the plaintiff will be unable to prove any set of facts in support of the claim." *Id.* (citing *Rose v. Tullos*, 994 So. 2d 734 (Miss. 2008)). Lastly, "[t]here must be no set of facts that would allow the plaintiff to prevail." *Id.* (internal quotation marks omitted) (quoting *J.B. Hunt Transp., Inc. v. Forrest Gen. Hosp.*, 34 So. 3d 1171, 1173 (Miss. 2010)).

   a.   *Federal Preemption of Servicing Claims*

8

¶20.   The federal statute at issue is 20 U.S.C. § 1098g of the Higher Education Act of 1965, stating that "[l]oans made, insured, or guaranteed pursuant to a program authorized by title IV of the Higher Education Act of 1965 shall not be subject to any disclosure requirements of any State law."  20 U.S.C. § 1098g (citation omitted).

¶21.   To begin, a presumption against federal preemption exists, affording deference to state law.  *See **Medtronic, Inc. v. Lohr***, 518 U.S. 470, 485 (1996).

> In all pre-emption cases, and particularly in those in which Congress has "legislated . . . in a field which the States have traditionally occupied," ***Rice v. Santa Fe Elevator Corp.***, 331 U.S. 218, 230 (1947), we "start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress."

***Id.*** (citations omitted).  Since states have traditionally decided consumer-protection law, the presumption against federal preemption applies today.  *See generally*, ***California v. ARC Am. Corp.***, 490 U.S. 93, 101 (1989) (analyzing the long history of state common-law and statutory remedies against unfair business practices); ***Fla. Lime and Avocado Growers, Inc. v. Paul***, 373 U.S. 132, 146 (1963) (holding that statute to "prevent the deception of consumers" was within scope of state's police powers).

¶22.   For federal preemption, the United States Constitution establishes federal law as "the supreme Law of the Land[.]"  U.S. Const. art. VI, cl. 2.  When determining whether a cause of action has been preempted by federal law, "[t]he purpose of Congress is the ultimate touchstone[.]"  ***Cipollone v. Liggett Grp., Inc.***, 505 U.S. 504, 516 (1992) (first alteration in

9

original) (internal quotation marks omitted) (quoting *Retail Clerks v. Schermerhorn*, 375

U.S. 96, 103 (1963)).

> [T]here [are] only three ways in which federal preemption might occur: "(1) where Congress explicitly preempts state law; (2) where preemption is implied because Congress has occupied the entire field, or (3) where preemption is implied because there is an actual conflict between federal and state law.

*Frith v. BIC Corp.*, 863 So. 2d 960, 965 (Miss. 2004) (citing *Cooper v. Gen. Motors*

*Corp.*, 702 So. 2d 428, 434 (Miss. 1997)).

¶23.     Thus "[t]he cornerstone of preemption is that a state law which conflicts with the

federal law is invalid under the Supremacy Clause." *Id.* (internal quotation marks omitted)

(quoting *Cooper*, 702 So. 2d at 434).  On that basis, Navient argues that there is express

preemption and also conflict preemption "undermining the federal government's overarching

interest in uniformity."

¶24.     In the case *sub judice*, Navient asserts that the State's "federal loan servicing claims

are subject to the first and third forms of federal preemption—*i.e.*, 'express preemption' and

'[conflict] preemption.'"  Navient seeks to convince the Court that the terms "any disclosure

requirements" from § 1098g preempts the entirety of the State's servicing claims, which

assert allegations of deceptive and unfair loan-servicing practices.  Put simply, Navient asks

the Court to "apply the statute as written."

¶25.     Recently, however, Navient's argument "has been rejected in at least three recent

federal cases." *Travis v. Navient Corp.*, 460 F. Supp. 3d 269, 280 (E.D.N.Y. May 18, 2020)

(holding that the plaintiff's state-law claims against Navient were not preempted by the

10

Higher Education Act); *see, e.g.*, **Nelson v. Great Lakes Educ. Loan Servs., Inc.**, 928 F.3d 639, 643 (7th Cir. 2019) (holding that Nelson's claims were not expressly preempted to the extent she was alleging that Great Lakes made false or misleading affirmative representations in the counseling process and neither conflict preemption nor field preemption applied to her claims); **Pennsylvania v. Navient Corp.**, 354 F. Supp. 3d 529, 533 (M.D. Pa. 2018) (holding that uniformity has not been universally recognized as the goal of the statute and is not harmed by allowing the types of claims at issue); **Hyland v. Navient Corp.**, No. 18cv9031 (DLC), 2019 WL 2918238 (S.D.N.Y. July 8, 2019) (rejecting Navient's express- and conflict-preemption claims under 20 U.S.C. § 1098g).

¶26. Each of the above cases is best summarized by the United States Court of Appeals for the Seventh Circuit:

> When a loan servicer holds itself out to a borrower as having experts who work for her, tells her that she does not need to look elsewhere for advice, and tells her that its experts know what options are in her best interest, those statements, when untrue, cannot be treated by courts as mere failures to disclose information. Those are affirmative misrepresentations, not failures to disclose. . . . A borrower who reasonably relied on them to her detriment is not barred by § 1098g from bringing state-law consumer protection and tort claims against the loan servicer.

*Nelson*, 928 F.3d at 643.

¶27. Here, the State's claims did not merely relate to disclosures, and the alleged practices are beyond what is contemplated by § 1098g. The State, similar to plaintiffs in *Travis*, *Nelson*, *Pennsylvania*, and *Hyland*, alleged that Navient "steered consumers into forbearance by advising consumers that forbearance was their best or only option when, in

11

fact, these consumers may have been eligible for an [income-driven repayment] plan." The State's complaint alleges multiple instances of Navient holding itself out to be working in the consumers' best interest.

¶28. For example, Navient urged borrowers that "Navient is here to help. We've found that, 9 times out of 10, when we can talk to a struggling federal loan customer we can help him or her get on an affordable payment plan."

¶29. Navient, however, attempts to bolster its preemption claims by relying on *Chae v. SLM Corp.*, 593 F.3d 936, 937 (9th Cir. 2010). However, in *Chae*, the United States Court of Appeals for the Ninth Circuit dealt with a different set of allegations that concerned late fees, repayment dates, billing statements, and coupon books. *Id.* at 950. The Ninth Circuit clarified the claims and stated that "the plaintiffs' misrepresentation claims [were] improper-disclosure claims" and were expressly preempted by § 1098g. *Chae*, 593 F.3d at 942.

¶30. Today, the State's claims reach far beyond late fees, coupon books, and billing statements. Applying the federal statute by its plain meaning, "[t]here is nothing in the [Higher Education Act] that standardizes or coordinates how a customer service representative of a third-party loan servicer . . . shall interact with a customer . . . in the day-to-day servicing of his loan outside of the circumstance of pre-litigation informal collection activity." *Travis*, 460 F. Supp. 3d at 282 (first, third, and fourth alterations in original) (internal quotation marks omitted) (quoting *Hyland*, 2019 WL 2918238, at *6).

12

That said, § 1098g does not contemplate the allegations within the State's complaint or have any preemptive effect on the State's claims, and we affirm the chancery court's decision.

        *b.      Rule 12(b)(6) Failure to State a Claim for Origination Claims*

¶31.    To begin, "Section 75-24-5(1) of the [Mississippi Consumer Protections Act] prohibits '[u]nfair methods of competition affecting commerce and unfair or deceptive trade practices affecting commerce . . . .'" ***Yazaki***, 294 So. 3d at 1184 (second and third alterations in original) (quoting Miss. Code Ann. § 75-24-5(1) (Rev. 2016)). "But the purpose of the statute is not to punish past violations." ***Id.*** Instead, "the purpose of the [the Act] is to restrain or enjoin unfair methods of competition through *injunctive* relief." ***Id.*** (quoting Miss. Code Ann. § 75-24-9 (Rev. 2016)).

¶32.    Further, "[a]ction[s] may be brought under Section 75-24-5(1) only under the provisions of Section 75-24-9." Miss. Code Ann. § 75-24-5(1) (Rev. 2016). Section 75-24-9 states:

> Whenever the Attorney General has reason to believe that any person is using, has used, or is about to use any method, act or practice prohibited by Section 75-24-5, and that proceedings would be in the public interest, he may bring an action in the name of the state against such person to restrain by temporary or permanent injunction the use of such method, act or practice.

Miss. Code Ann. § 75-24-9 (Rev. 2016).

¶33.    Relying on the statute's plain meaning, the chancery court's order based its decision on the fact that "Miss. Code Ann. § 75-24-9 authorizes the State to seek injunctive relief based on past conduct alone." In addition, the chancery court noted:

13

When seeking and granting statutory injunctions in civil enforcement cases, parties who have previously engaged in egregious illegal activity are reasonably likely to continue or repeat their misconduct-even when they claim they have ceased doing wrong, or if there is no absolute proof of current wrongdoing.

¶34. More than a year after the chancery court issued its order, the *Yazaki* Court, however, clarified the issue for the first time:

[T]he attorney general's "hav[ing] reason to believe that any person is using, has used, or is about to use any method, act or practice prohibited by Section 75-24-5" is a necessary element to bring a Section 75-24-9 action. But it is not the only element.

Section 75-24-9 requires that the attorney general have reason to believe "that proceedings would be in the public interest," and the purpose of the action must be "to restrain by temporary or permanent injunction the use of such method, act or practice." Miss. Code Ann. § 74-24-9. So in determining if the State's complaint sufficiently alleged a claim under the MCPA, the dispositive question is not whether the defendant's alleged past conduct is covered by the phrase "has used." Rather, *the controlling issue is whether the State has alleged facts that support a reasonable inference of present or future illegal conduct that needs to be enjoined.*

*Yazaki*, 294 So. 3d at 1186 (second alteration in original) (emphasis added).

¶35. While the chancery court here focused on Navient's past conduct, "th[e] Court is neither bound by nor even concerned with why the [chancery court] reached its result but rather considers anew the legal sufficiency of the complaint." *Id.* (citing *Trigg v. Farese*, 266 So. 3d 611, 619 (Miss. 2018)).

¶36. Now, Navient asserts, and the State admits, that "the State has not alleged in the [complaint] that Navient is currently originating private student loans." Even though the chancery court based its decision in 2018 on Navient's past conduct alone, the *Yazaki* Court

14

acknowledged a possibility—and even cited the same case as the chancery court—that "there could be cases in which the nature of the past conduct would support seeking to enjoin future conduct." *Id.* (citing Order, ***Hood ex rel. State v. BASF Corp***, No. 56863, 2006 WL 308378 (Rankin County, Miss., Ch. Ct. Jan. 17, 2006) (finding the defendants' prior acts when combined with other factors supported the attorney general's reasonable belief that the defendant needs to be monitored)).

¶37.    Again, in *Yazaki*, the Court held that "the State's factual allegations fail[ed] to support any reasonable danger of future conduct by the defendants that will violate the [the Act]." *Id.* at 1187.  The Court further held that the State's "complaint provided no factual basis for the alleged illegal activity continuing past 2010." *Id.*  In short, the *Yazaki* defendants were convicted of federal crimes, suffered criminal sanctions, and were forced to pay hundreds of millions of dollars in fines, which further reduced the likelihood that it would repeat its past conduct. *Id.* at 1187.  The *Yazaki* Court held that the State "failed to allege *any* facts that support the danger of a present or future unfair trade practice warranting injunctive relief to protect the public's interest."

¶38.    In contrast to the *Yazaki* defendants, Navient has suffered no consequences, and it remains active in its practice with infinitely more potential to reenter the business of loan origination. Therefore, considering anew the legal sufficiency of the State's complaint under the facts alleged, the State has alleged facts that support the danger of a present or future

15

unfair trade practice warranting injunctive relief to protect the public's interest. Therefore, we affirm the chancery court's order.

## CONCLUSION

¶39.    The Court affirms the chancery court's order denying Navient's motion to dismiss and remands the case for further proceedings.

¶40.    **AFFIRMED AND REMANDED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., MAXWELL, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.**